STATE OF CONNECTICUT *v.* DONALD L. CHAPMAN
(14604)

PETERS, C. J., CALLAHAN, BERDON, KATZ and SANTANIELLO, Js.

Argued February 11—decision released September 7, 1993*

*Lawrence J. Tytla,* assistant state's attorney, with whom, on the brief, was *C. Robert Satti, Sr.,* state's attorney, for the appellant (state).

*Ira B. Grudberg,* with whom was *Thomas W. Ude, Jr.,* for the appellee (defendant).

BERDON, J. The defendant, Donald L. Chapman, was convicted by a jury of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1)[1] and sentenced to a term of fourteen years, execution suspended after seven years. The defendant appealed to the Appellate Court, claiming that the trial court had improperly instructed the jury that it could find him

---

* The state's motion for reconsideration or reargument en banc was granted October 5, 1993. This opinion has been superseded by *State* v. *Chapman,* 229 Conn. 529, 643 A.2d 1213 (1994).

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

guilty of sexual assault in the first degree if it found that he had compelled sexual intercourse either by the use of force or by the threat of use of force. The state had not charged the defendant with having threatened to use force, nor did the state introduce evidence of the threat of use of force.[2] The Appellate Court concluded that the trial court had "improperly instructed the jury on a statutory alternative for which there was no supporting evidence" and ordered a new trial. *State v. Chapman,* 28 Conn. App. 360, 366, 610 A.2d 1328 (1992). We granted the state's petition for certification limited to the following issues: "(1) Did the Appellate Court correctly conclude that the statutory alternative analysis set forth in *State v. Williams,* 202 Conn. 349, 363–64 [521 A.2d 150] (1987), applied to alternative language occurring within the same statutory sub[division] and that the trial court's instruction permitted the jury to consider a separate and distinct theory of criminal liability? (2) Was the Appellate Court correct in its failure to consider whether any error in the trial court's charge was harmless beyond a reasonable doubt?" *State v. Chapman,* 223 Conn. 923, 614 A.2d 827 (1992). We conclude that the trial court improperly instructed the .jury on a statutory alternative for which the defendant was not charged and for which there was no supporting evidence.[3] We also conclude that the trial

---

[2] In the Appellate Court, the defendant also claimed that (1) his amnesia rendered him incompetent to stand trial, (2) the trial court improperly failed to admit statements made by the victim to the defendant to show their effect on the defendant's state of mind, and (3) the trial court improperly referred to the defendant's "misstatements" in its charge to the jury on consciousness of guilt. *State v. Chapman,* 28 Conn. App. 360, 361–62, 610 A.2d 1328 (1992). Those issues are not before this court.

[3] The defendant claims that the state waived its first claim, that the use of force and the threat of use of force are not statutory alternatives, by failing to raise the issue in the Appellate Court. *State v. Duhan,* 194 Conn. 347, 354, 481 A.2d 48 (1984) (failure to raise issue before Appellate Court is grounds to deny review in this court). Indeed, the state in its brief before

court's instruction violated the defendant's due process rights under the Connecticut constitution and that harmless error analysis is not required. We therefore affirm the judgment of the Appellate Court.

For the purposes of the issues raised in this appeal, we need to concern ourselves only with the following limited facts. The state charged only that the defendant had compelled sexual intercourse by the use of force and introduced evidence to that end.[4] The state concedes that it introduced *no evidence* that the defendant had committed the offense by *threatening* the use of force against the victim. Nevertheless, the trial court instructed the jury that "a person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or *by the threat of the use of force* against such person which reasonably causes such person to fear physical injury." (Emphasis added.) Indeed, the trial court instructed on the use of a threat as an alternative means of committing the crime on three separate occasions. The defendant took an exception to the instruction on committing sexual assault by threatening the use of force, thereby appropriately preserving this claim for appellate

the Appellate Court referred to "force" as the charged theory of liability and "threat of force" as the uncharged theory of liability; it further referred to them as "both theories." Nevertheless, because the first issue is so interwoven with the second certified question concerning harmlessness; see *Cahn* v. *Cahn,* 225 Conn. 666, 679 n.1, 626 A.2d 296 (1993) (*Berdon, J.,* concurring); we will review the claim. Furthermore, both parties have fully briefed the issue.

[4] By way of a substitute information, the state charged that "at the Highland Horse Farm in the Town of Ledyard, on or about the late evening hours of March 2, 1990, to the early morning hours of March 3, 1990, the defendant attempted to, and did compel, the victim to engage in sexual intercourse by the use of force against said victim, to wit: the said Donald L. Chapman restrained the victim, attempted to, and did forcibly penetrate her vagina with his penis, in violation of Sections 53a-49 (a) (2) and 53a-70 (a) (1) of the Connecticut General Statutes."

review. See Practice Book § 852;[5] *State* v. *Smith,* 219 Conn. 160, 592 A.2d 382 (1991); *State* v. *Hill,* 201 Conn. 505, 512, 518 A.2d 388 (1986).

I

## STATUTORY ALTERNATIVE ANALYSIS

Sexual assault in the first degree may be committed by two methods under § 53a-70 (a) (1): (1) by compelling another person to engage in sexual intercourse by "the use of force"; or (2) by compelling another person to engage in sexual intercourse by "the threat of use of force." We have held on numerous occasions that " '[w]here a person may have been convicted under more than one statutory alternative, the judgment cannot be supported unless the evidence was sufficient to establish guilt under each statutory provision which the trier may have relied upon.' *State* v. *Marino,* 190 Conn. 639, 650–51, 462 A.2d 1021 (1983); *State* v. *Thompson,* 197 Conn. 67, 74, 495 A.2d 1054 (1985); *State* v. *Asherman,* 193 Conn. 695, 730, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985); *State* v. *Reid,* 193 Conn. 646, 666, 480 A.2d 463 (1984); see *State* v. *Silveira,* 198 Conn. 454, 459, 503 A.2d 599 (1986). This rule is based on the principle that jurors are presumed to follow the instructions given by the judge. *State* v. *Barber,* 173 Conn. 153, 156, 376 A.2d 1108 (1977); *State* v. *DellaCamera,* 166 Conn. 557, 567, 353 A.2d 750 (1974)." *State* v. *Williams,* supra. By instructing the jury on a theory of criminality for which there is no supporting evidence, the trial court implies that there is a factual

---

[5] Practice Book § 852 provides: "The supreme court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. Upon request, opportunity shall be given to present the exception out of the hearing of the jury."

dispute for the jury to resolve regarding that theory of criminality. The trial court's instruction authorizes the jury to consider and to resolve the implied factual dispute. Id., 364. "The trial court should submit no issue to the jury which is foreign to the facts in evidence, or upon which no evidence was offered, and it should not submit to the jury considerations which find no support in the evidence." (Internal quotation marks omitted.) State v. Campbell, 225 Conn. 650, 659, 626 A.2d 287 (1993); see also State v. Williams, supra.

The state claims that the statutory alternative analysis employed in State v. Williams, supra, is not applicable in this case because the two methods of committing sexual assault in the first degree at issue here—use of force and the threat of use of force—are set forth in the same subdivision of the statutory definition. The state argues that the analysis in Williams should apply only when the statutory alternatives are framed in separately numbered statutory subdivisions. We disagree. Whether the legislature has distinguished between methods of achieving a result by placing them in separately labeled subdivisions or within a single subdivision is not determinative for deciding whether to apply the statutory alternative analysis set forth in Williams. We decline to adopt the distinction advanced by the state because it would elevate form over substance by analyzing a statute on the basis of its structure rather than its purpose. See State v. Wood, 208 Conn. 125, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988); State v. Gonzalez, 206 Conn. 213, 219, 537 A.2d 460 (1988).

Instead, we must focus on the underlying purpose of the statutory alternative analysis set forth in State v. Williams, supra, 364, which serves the essential function of ensuring that juries do not convict under a theory of criminality unless the evidence is sufficient to establish guilt under that theory. In view of this under-

lying purpose, we must turn to the substance of the statutory text to determine whether the use of force and the threat of the use of force are separate statutory alternatives.

Section 53a-70 (a) provides that sexual assault may be committed by the "use of force against such other person . . . or by the threat of the use of force against such other person . . . which reasonably causes such person to fear physical injury to such person or a third person . . . ." The text of the statute clearly separates "force" from "threat of use of force" by using the disjunctive "or." The "use of the disjunctive 'or' between the two parts of the statute indicates a clear legislative intent of separability." *State* v. *Dennis,* 150 Conn. 245, 248, 188 A.2d 65 (1963). Thus, in *State* v. *Belton,* 190 Conn. 496, 500–501, 461 A.2d 973 (1983), we held that the trial court had impermissibly enlarged the offense charged by incorporating the uncharged disjunctive phrase "remains unlawfully" when explaining the elements of burglary in the first degree. Under General Statutes § 53a-101 (a), "[a] person is guilty of burglary in the first degree when he *enters or remains* unlawfully in a building with intent to commit a crime therein . . . ." We noted that "a burglary is committed when either type of 'entry' is established"; id., 501; and concluded that the trial court had violated the defendant's due process rights under the state and federal constitutions by repeatedly using the disjunctive phrase "remains unlawfully," when the state had not charged the defendant with that theory of liability.

Similarly, we have consistently held that the "use of force" and the "threat of use of force" are "two methods of committing the same crime." *State* v. *Secore,* 194 Conn. 692, 698, 485 A.2d 1280 (1984); *State* v. *Franko,* 199 Conn. 481, 490, 508 A.2d 22 (1986); *State* v. *Carter,* 189 Conn. 611, 628–29, 458 A.2d 369 (1983); see also 5 Connecticut Practice, D. Borden &

L. Orland, Criminal Jury Instructions (1986) (suggesting separate jury instructions for the use of force [§ 10.2] and the threat of use of force [§ 10.1]).

The state argues that the use of force and the threat of force cannot be statutory alternatives, however, because they can occur together and because they cause an identical result—namely, compelled sexual intercourse. We reject both of these arguments. Although an assailant may use force simultaneously with a threat to use force, each method may occur in isolation, as indicated by the plain language of the statute, which delineates the use of force separately from the threat of the use of force, and by the facts of this case. As previously noted, the state concedes that it neither charged nor introduced evidence to show that the defendant had threatened to use force, but limited its case to the actual use of force. As a result, the rationale behind the statutory alternative analysis of *State v. Williams,* supra, which seeks to ensure that the jury is not charged on a theory of liability for which no evidence has been introduced, applies whether the statutory alternatives are set forth in separately numbered subdivisions or within the same subdivision.

Our conclusion that the Appellate Court properly applied the statutory alternative analysis of *Williams* to the present case gains further support from the legislative history. Section 53a-70 was substantially amended by No. 75-619 of the 1975 Public Acts, which substituted the term "assault" for "misconduct" and provided that sexual assault could be committed by the threat of force as well as force. During the debate, Senator Betty Hudson stated: "The present statute requires that there be force, force enough . . . to overcome earnest resistance, whatever that means. Well in most rape cases, there is no resistance. . . . In fact, in eighty-seven percent of rape cases, there is no resistance . . . because the rapist has a knife or

a gun and threatens the woman's life or that of her child." 18 S. Proc., Pt. 7, 1975 Sess., p. 3222. Senator Hudson's remarks indicate that the legislature intended to punish for sexual assault those individuals who compelled sexual intercourse by threatening to use force, in addition to those who used actual force. This legislative history indicates an intent not to merge force and the threat of force, but rather supports the conclusion that force and threat of force are two separate methods of committing the same crime.

We conclude that the use of force and the threat of force, as used to define sexual assault in the first degree in violation of § 53a-70 (a) (1), are distinct statutory alternatives. Accordingly, we affirm the Appellate Court's application of the analysis in *State* v. *Williams,* supra.

## II

### HARMLESS ERROR ANALYSIS

In its second claim, the state argues that the Appellate Court should have applied harmless error analysis in determining whether to order a new trial because the trial court's instruction authorized the jury to consider a separate and distinct theory of liability. The state's contention cannot properly be addressed without first considering whether a jury instruction that allows a jury to convict a defendant on the basis of a statutory alternative for which there was no evidence violates a defendant's right to due process.

The underlying federal rule of due process was announced in *Yates* v. *United States,* 354 U.S. 298, 77 S. Ct. 1064, 1 L. Ed. 2d 1356 (1957), overruled on other grounds, *Burks* v. *United States,* 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). In that case, the government had charged the defendants with conspiring to (1) advocate and teach the duty and necessity of over-

throwing the government and (2) organize persons who so advocate and teach with the intent of overthrowing the government. The court noted that "in order to convict, the jury was required, as the court charged, to find an overt act which was 'knowingly done in furtherance of an object or purpose of the conspiracy charged in the indictment,' and we have no way of knowing whether the overt act found by the jury was one which it believed to be in furtherance of the 'advocacy' rather than the 'organizing' objective of the alleged conspiracy. . . . In these circumstances we think the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." Id., 311–12.

The state contends, however, that following the United States Supreme Court's decision in *Griffin* v. *United States,* 502 U.S.     , 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991), a general verdict is valid so long as the evidence is sufficient with respect to any *one* of the alternatives charged.[6] In *Griffin,* the court reaffirmed the rule, under federal law, set forth in *Turner* v. *United States,* 396 U.S. 398, 420, 90 S. Ct. 642, 24 L.

---

[6] The United States Supreme Court predicated its holding in *Griffin* v. *United States,* 502 U.S.     , 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991), on common law pertaining to the "general verdict" rule. "The rule of criminal procedure applied by the Seventh Circuit here is not an innovation. It was settled law in England before the Declaration of Independence, and in this country long afterwards, that a general jury verdict was valid so long as it was legally supportable on one of the submitted grounds—even though that gave no assurance that a valid ground, rather than an invalid one, was actually the basis for the jury's action." Id., 469. Nevertheless, under Connecticut common law, firmly established before the adoption of our state constitution in 1818, litigants were able to protect themselves from the effects of a general verdict by taking separate verdicts on separate counts. *Curry* v. *Burns,* 225 Conn. 782, 626 A.2d 719 (1993); *Wolcott* v. *Coleman,* 2 Conn. 324, 338 (1817) ("[i]n a case where there are good and bad counts in a declaration, if the defendant wishes to question the sufficiency of any of them, verdicts can be taken on each count separately").

Ed. 2d 610 (1970), as follows: " '[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged.' " Id., 473. *Griffin* is therefore inapposite in this case because it is limited to statutory alternatives charged in the conjunctive.[7] In the present case, the trial court's instructions to the jury were predicated on an information that charged the defendant *disjunctively*. We need not speculate as to whether the United States Supreme Court would apply the tailored rule set forth in *Griffin* to statutory alternatives charged disjunctively because the defendant invokes the state constitution as well as the federal constitution.[8]

---

[7] In *Griffin* v. *United States,* 502 U.S. , 112 S. Ct. 466, 470, 116 L. Ed. 2d 371 (1991), the United States Supreme Court stated that "[n]one of the three authorities cited for that expansive proposition [in *Yates* v. *United States,* 354 U.S. 298, 77 S. Ct. 1064, 1 L. Ed. 2d 1356 (1957), overruled on other grounds, *Burks* v. *United States,* 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978)] in fact establishes it." The court noted that one of the statutory alternatives at issue in *Stromberg* v. *California,* 283 U.S. 359, 51 S. Ct. 532, 75 L. Ed. 1117 (1931), overruled by *Griffin,* was of doubtful constitutionality; that one of the statutory alternatives at issue in *Williams* v. *North Carolina,* 317 U.S. 287, 63 S. Ct. 207, 87 L. Ed. 279 (1942), violated the full faith and credit clause; and that two of the overt acts proffered by the prosecution in *Cramer* v. *United States,* 325 U.S. 1, 65 S. Ct. 918, 89 L. Ed. 1441 (1945), did not satisfy the overt act requirement of article three, § 3, of the United States constitution. *Griffin* v. *United States,* supra, 471–72.

In *State* v. *Reid,* 193 Conn. 646, 667 n.22, 480 A.2d 463 (1984), however, this court cautioned against confusing cases in which the trial court permits the jury to consider an "improper basis for a conviction under circumstances where it is impossible to tell whether the conviction rests upon the impermissible ground" with cases involving the rule that "where a guilty verdict is returned on an information charging several acts in the conjunctive the information is not defective in relation to the verdict if the evidence is sufficient with respect to any of the acts charged."

[8] "The proper sequence is to analyze the state's law, including its constitutional law, before reaching a federal constitutional claim. This is required, not for the sake either of parochialism or of style, but because the state does not deny any right claimed under the federal Constitution when the claim before the court in fact is fully met by state law." *Mas-*

"It is well established that federal constitutional and statutory law establishes a minimum national standard for the exercise of individual rights and does not inhibit state governments from affording higher levels of protection for such rights. . . . *Cologne* v. *Westfarms Associates,* 192 Conn. 48, 57, 469 A.2d 1201 (1984); *State* v. *Barton,* 219 Conn. 529, 546, 594 A.2d 917 (1991)." (Internal quotation marks omitted.) *State* v. *Geisler,* 222 Conn. 672, 684, 610 A.2d 1225 (1992). We have held that, among other things, it is appropriate to focus on our state common law and state history in construing the contours of our state constitution. Id., 686. "State courts . . . must be empowered to determine, in light of state interests and state history, what meaning to attribute to provisions contained in state constitutions." E. Peters, "State Constitutional Law: Federalism in the Common Law Tradition," 84 Mich. L. Rev. 583, 588 (1986). Moreover, we may look to the historical record and due process tradition in Connecticut in determining whether article first, § 8, of the Connecticut constitution affords greater rights than its federal counterpart. *State* v. *Stoddard,* 206 Conn. 157, 164–66, 537 A.2d 446 (1988).

An instruction on a statutory alternative that is not supported by the evidence violates a defendant's fundamental right, protected by the due process clause of article first, § 8, of the Connecticut constitution, "to be acquitted unless proven guilty of each element of the charged offense beyond a reasonable doubt."[9] *State* v. *Williams,* supra, 363; see also *State* v. *Rodriguez,* 223 Conn. 127, 147, 613 A.2d 211 (1992); *State* v. *Allen,* 216 Conn. 367, 388–89, 579 A.2d 1066 (1990); *State* v.

*sachusetts* v. *Upton,* 466 U.S. 727, 736, 104 S. Ct. 2085, 80 L. Ed. 2d 721 (1984) (Stevens, J., concurring); *Sterling* v. *Cupp,* 290 Or. 611, 614, 625 P.2d 123 (1981).

[9] Article first, § 8, of the Connecticut constitution provides in part: "No person shall . . . be deprived of life, liberty or property without due process of law . . . ."

*John,* 210 Conn. 652, 688, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989); *State* v. *Arnold,* 201 Conn. 276, 281–82, 514 A.2d 330 (1986); *State* v. *Reid,* 193 Conn. 646, 666, 480 A.2d 463 (1984). A similar principle applies when the trial court instructs the jury that it may convict a defendant on the basis of a statutory alternative for which there is no evidence. Accordingly, it is firmly entrenched in the common law of this state that " '[t]he court has a duty to submit to the jury no issue upon which the evidence would not reasonably support a finding.' " *State* v. *Williams,* supra, 364; *Batick* v. *Seymour,* 186 Conn. 632, 641, 443 A.2d 471 (1982). "[I]f a claim is made against the evidence in the case, and wholly unsupported by proof, it is error to submit it to the jury as if the evidence justified the claim, and without comment, as there is great danger of its leading to an unjust verdict." *Lewis* v. *Phoenix Mutual Life Ins. Co.,* 44 Conn. 72, 88 (1876); see also *Allen* v. *Rundle,* 50 Conn. 9, 33, 47 A. 599 (1882); *Hartford* v. *Champion,* 58 Conn. 268, 276, 20 A. 471 (1890); *McGarry* v. *Healey,* 78 Conn. 365, 367, 62 A. 671 (1905); *Miles* v. *Sherman,* 116 Conn. 678, 682, 166 A. 250 (1933) ("instruction which left the door open for the entrance of a finding by the jury of negligence on the defendant's part, or of due care upon the plaintiff's part, which did not arise out of the evidence in the case, was calculated to do the defendant harm"); *Novak* v. *Anderson,* 178 Conn. 506, 508, 423 A.2d 147 (1979).

The principle of not submitting to the jury any issue for which there is insufficient evidence has roots in our early common law. Justice Swift, writing in 1822, shortly after the adoption of the state constitution in 1818, noted that the jury in its deliberations "must find expressly all the facts put in issue, or must negate them all." 2 Z. Swift, Digest of the Laws of the State of Connecticut (1823) p. 774. Similarly, Justice Swift recog-

nized the court's power to "direct the jury to say, in their verdict, on which count they find the defendant guilty, and to find him not guilty on the rest, so that if he should be found guilty on an insufficient count, he might take advantage of it by motion in arrest." Id., p. 383. Also imbedded in our common law is the notion that the judge has the power "to defend the innocent against an unjust verdict . . . ." Id., p. 413. Implicit in the power to set aside a verdict that has no support in the evidence is the idea that the court should not submit to the jury, in the first instance, an issue that has no support in the evidence. By doing so, the court invites an unjust verdict.

Accordingly, we conclude that the due process clause of the Connecticut constitution prohibits the trial court from charging the jury on a statutory alternative for which there is no evidence and on which the jury could improperly predicate its verdict. "[A] general verdict of guilty without specific findings as to the alternative on which it rested . . . must be set aside if the evidence as to either alternative submitted was insufficient." *State* v. *Arnold,* supra, 282; see also *State* v. *Williams,* supra, 364.

The state argues that even if the Appellate Court properly concluded that the jury charge violated the defendant's right to due process by enlarging the offense charged, it should not have reversed his conviction without engaging in a harmless error analysis. We disagree. Ordinarily, we abide by the principle that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware* v. *Van Arsdall,* 475 U.S. 673, 681, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). In such cases, under the state constitution as well as the federal constitution, the state must prove

that the constitutional impropriety was harmless beyond a reasonable doubt. *State* v. *Oquendo,* 223 Conn. 635, 660, 613 A.2d 1300 (1992).

Nevertheless, some constitutional errors require automatic reversal in order to vindicate the fundamental right in question. "[I]nfringements of a defendant's constitutional rights in a criminal case where harmless error analysis is deemed inappropriate involve situations where the constitutional violation must be deemed harmful under all circumstances or where it is of such a nature that ascertainment of its harmfulness is impossible or so difficult as not to warrant the endeavor. Such cases are rare exceptions to 'the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.' *Delaware* v. *Van Arsdall,* [supra]." *State* v. *Mebane,* 204 Conn. 585, 604–605, 529 A.2d 680 (1987), cert. denied, 484 U.S. 1046, 108 S. Ct. 784, 98 L. Ed. 2d 870 (1988) (*Shea, J.,* concurring); J. Bruckmann, G. Nash & J. Katz, Connecticut Criminal Caselaw Handbook (1989) p. 492.

The present case falls within the category of cases that require automatic reversal. *State* v. *Williams,* supra. By instructing the jury on a statutory alternative for which there was no evidence, the trial court expressly sanctions a verdict that has no foundation in the evidence. Following such an instruction, it is " 'impossible to determine whether the jury based its decision on an act for which there was insufficient evidence . . . .' *United States* v. *Berardi,* [675 F.2d 894, 902 (7th Cir. 1982)]." *State* v. *Arnold,* supra. We will never know the statutory predicate for the jury's verdict.[10] Accordingly, when the jury, on the basis of the

---

[10] The state argues that because there was no evidence of a threat in this case, it is inconceivable that the jury could have found the defendant guilty predicated on the threat of force theory. The state's argument overlooks

trial court's instructions, renders a general verdict that does not specify the statutory alternative on which it rests, it "must be set aside if the evidence as to either alternative submitted was insufficient"; id.; without engaging in a harmless error analysis.[11] Accordingly, we conclude that the due process clause contained in article first, § 8, of the Connecticut constitution requires a new trial if the trial court instructs the jury that the defendant may be found guilty on a statutory alternative for which there is no evidence.

The judgment is affirmed.

In this opinion PETERS, C. J., and KATZ, J., concurred.

CALLAHAN, J., dissenting. The substitute information in this case charged the defendant with the crime of sexual assault in the first degree by compelling sexual intercourse by the use of force. The trial court in its instructions, however, expanded the charge in the information and advised the jury that if it found proven beyond a reasonable doubt that the defendant had used force *or the threat of use of force* to compel intercourse, it could convict him of the crime charged.

---

the basic tenet of our jurisprudence that "jurors are presumed to follow the instructions given by the judge." *State* v. *Williams,* 202 Conn. 349, 364, 521 A.2d 150 (1987). "We cannot presume that the jury rejected this issue because of the absence of evidence." Id.

[11] Furthermore, it is clear that we have always required reversal and a new trial under our common law in the case of an "unjust verdict." We have consistently held that no issue may be submitted to the jury for which there is no evidence. Thus, we have ordered new trials in cases in which the trial court improperly submitted to the jury an issue for which there was no evidence. *Novak* v. *Anderson,* 178 Conn. 506, 508, 423 A.2d 147 (1979); *Miles* v. *Sherman,* 116 Conn. 678, 683, 166 A. 250 (1933); *Lewis* v. *Phoenix Mutual Life Ins. Co.,* 44 Conn. 72, 88 (1876). Moreover, this court has recognized the trial court's inherent power to set aside an unjust verdict. *State* v. *Hammond,* 221 Conn. 264, 267–70, 604 A.2d 793 (1992); *State* v. *Avcollie,* 178 Conn. 450, 456, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980).

The state, however, presented no evidence during the defendant's trial of the use of threats by the defendant to compel the victim to engage in sexual intercourse. Despite the total lack of evidence of any threat of use of force and an abundance of evidence of the actual use of force by the defendant, the Appellate Court nonetheless determined that the jury may have convicted the defendant on the uncharged theory that he had employed threats to compel intercourse. It therefore concluded that he was entitled to a new trial because he had been afforded inadequate notice of the charges against him. The Appellate Court did not conduct a harmless error analysis. *State* v. *Chapman,* 28 Conn. App. 360, 363–66, 610 A.2d 1328 (1992). The majority agrees with the disposition of the case by the Appellate Court. The record in this case, however, does not reflect any reasonable possibility that the portion of the instruction to which the defendant objects misled the jury. *State* v. *Townsend,* 206 Conn. 621, 627, 539 A.2d 114 (1988); *State* v. *Ruiz,* 171 Conn. 264, 273, 368 A.2d 222 (1976). The instruction was therefore harmless. Moreover, there is no reason why the instruction, if improper, should not have been afforded harmless error analysis.

That portion of the trial court's instructions that explained the elements of sexual assault in the first degree reads as follows: "Now, a person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or by the threat of the use of force against such person which reasonably causes such person to fear physical injury. In order to commit the crime of sexual assault in the first degree the state must prove beyond a reasonable doubt that, one, sexual intercourse had taken place. And two, the defendant compelled the victim to engage in sexual intercourse either by the use of force or by

threat of the use of force which caused the victim to reasonably fear physical injury to herself. . . . If you find the required sexual intercourse had been proven beyond a reasonable doubt, you must next determine whether the defendant used or threatened the use of force. Use of force means either the use of a dangerous instrument, there is no claim of that here, or the use of actual physical force or violence or superior physical strength against the victim. Thus, if you find that the [state] has proved beyond a reasonable doubt each of the elements of this offense you will find the defendant guilty. If on the other hand, you conclude that the state had failed to prove beyond a reasonable doubt one or more of these elements you must find the defendant not guilty of the crime charged."

The majority has determined that there is a reasonable possibility that this portion of the court's instruction could have misled the jury to convict the defendant of a crime with which he was not charged and of which there was no evidence, and was therefore violative of the defendant's constitutional rights. It concludes that under the state constitution, the instruction was therefore per se harmful and requires reversal. I disagree.

The substitute information clearly put the defendant on notice that he was charged with compelled sexual intercourse. Whether the compulsion was due to force or threat of the use of force, his defense would not have changed. The theory of his defense was that the victim had initially consented to his sexual advances. When she subsequently requested that he stop, the defendant testified that he did so. According to the defendant, therefore, there was neither force nor the threat of use of force nor sexual intercourse. If the jury had believed the defendant, pursuant to the instructions given by the trial court, it would had to have found him not guilty. Because the court's instruction was not prejudicial to his defense, it was harmless. *State* v. *Rus-*

*coe,* 212 Conn. 223, 253, 563 A.2d 267 (1989), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990); *State* v. *Scognamiglio,* 202 Conn. 18, 22, 519 A.2d 607 (1987); *State* v. *Franko,* 199 Conn. 481, 488–93, 508 A.2d 22 (1986).

The Appellate Court and the majority, by concluding that the court's instruction was harmful per se and required reversal, have done an injustice to this victim and other victims, who may at a later date find themselves in similar situations. To cut off harmless error analysis under these facts seems a departure from the very reason for the existence of the harmless error doctrine. See *Chapman* v. *California,* 386 U.S. 18, 22–23, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). The purpose of the harmless error doctrine is to preserve the primary aim of a criminal trial—the factual determination of guilt or innocence—from being subverted by the virtually inevitable presence of immaterial error. *Arizona* v. *Fulminante,* 499 U.S. 279, 308, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991).

The enlargement of the charged offense in this instance was inconsequential. In order to convict the defendant, on the theory of the threat of use of force, the jury would have had to discount the extensive testimony of the victim concerning the defendant's use of actual force, manufacture its own evidence of the threat of the use of force and finally conclude that such nonexistent threats of force, not the actual force testified to by the victim, were proven beyond a reasonable doubt to have compelled sexual intercourse. Why that scenario requires that there be no harmless error analysis and per se reversal escapes me. There was no "structural defect" in the trial mechanism that required such a drastic result. See id., 310.

Moreover, as the majority points out, " 'jurors are presumed to follow the instructions given by the judge.'

*State* v. *Williams,* 202 Conn. 349, 364, 521 A.2d 150 (1987)." The trial judge in this case instructed the jury that it could consider only the evidence introduced at trial and directed the attention of the jury to the substitute information that "you are going to have . . . with you. And you can, you are guided by that information. In other words, the state is alleging the facts as you find them in that substituted information as a basis for their claim that the defendant Donald Chapman did commit the crime of sexual assault in the first degree." The substitute information read in relevant part that "the defendant attempted to, and did compel, the victim to engage in sexual intercourse by the use of force against said victim, to wit: the said Donald L. Chapman restrained the victim, attempted to, and did forcibly penetrate her vagina with his penis . . . ." It did not mention threats.

If considered in context, no reasonable juror could have been misled by the challenged portion of the instruction to convict the defendant of sexual assault by the use of threats, of which there was no evidence, when there was direct testimony from the victim that the defendant had used actual force to overcome her resistance. *State* v. *Townsend,* supra. In summary, if there was any impropriety in the trial court's instructions, there was no reasonable possibility that it misled the jury to convict the defendant on an uncharged theory of liability. Consequently, any impropriety was harmless beyond a reasonable doubt. It strikes me, however, that it is cruel and unusual punishment to require the victim to be put through another trial and to have to again recount her traumatic experience in public when there is not even a remote possibility, let alone any reasonable possibility, that the instruction complained of affected the outcome of the jury's deliberations.

I would reverse the judgment of the Appellate Court and reinstate the jury's verdict and the trial court's judgment.

SANTANIELLO, J., dissenting. The Appellate Court improperly applied the statutory alternative analysis set forth in *State* v. *Williams,* 202 Conn. 349, 363–64, 521 A.2d 150 (1987), to alternative language occurring within the same statutory subdivision. In *Williams* we held that the trial court "erred in instructing the jury on a statutory alternative for which there was no supporting evidence." Id., 364. The statutory alternatives under consideration, however, were specifically enumerated subdivisions of the statute.[1] In support of the decision to apply the statutory alternative analysis, the Appellate Court opinion cites seven Connecticut cases. Six of those cases involve statutes with specifically enumerated subdivisions.[2] The seventh, *State* v. *Thompson,* 197 Conn. 67, 495 A.2d 1054 (1985), involves the alternatives contained in General Statutes (Rev. to 1981) § 19-480a (a), now codified as § 21a- 278, possession of drugs with intent to sell and transportation of drugs with intent to sell. Possession and transportation, however, are different actions. Similarly, entering premises unlawfully and remaining unlawfully after a lawful entry are different actions. See *State* v.

[1] The court charged the jury under subdivisions (1) and (2) of General Statutes § 53a-133, even though the state presented evidence to support the defendant's conviction under subdivision (1) only.

[2] *State* v. *Williams,* 202 Conn. 349, 521 A.2d 150 (1987) (General Statutes § 53a-133 [1] and [2]); *State* v. *Silveira,* 198 Conn. 454, 503 A.2d 599 (1986) (General Statutes § 53a-55 [a] [1] and [3]); *State* v. *Asherman,* 193 Conn. 695, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985) (General Statutes § 53a-55 [a] [1], [2] and [3]); *State* v. *Reid,* 193 Conn. 646, 480 A.2d 463 (1984) (General Statutes § 53a-55 [a] [1], [2] and [3]); *State* v. *Marino,* 190 Conn. 639, 462 A.2d 1021 (1983) (General Statutes § 53a-11 [a] [1], [2] and [3]); *State* v. *Reyes,* 19 Conn. App. 695, 564 A.2d 309, cert. denied, 213 Conn. 803, 567 A.2d 833 (1989) (General Statutes § 53a-133 [1] and [2]).

*Belton,* 190 Conn. 496, 461 A.2d 973 (1983). A statutory alternative analysis is appropriate only if the statute contains specifically enumerated subdivisions or proscribed different actions.

General Statutes § 53a-70 (a), on the other hand, proscribes one action, compelled sexual intercourse. *State* v. *Tucker,* 226 Conn. 618, 646, 629 A.2d 1067 (1993). "[T]he language of § 53a-70 divides the statute, not into two crimes, but into two methods of committing the same crime . . . ." *State* v. *Secore,* 194 Conn. 692, 698, 485 A.2d 1280 (1984); *State* v. *Tucker,* supra. "[C]ompulsion is an essential element of the crime of sexual assault in the first degree, either by the actual use of force or the threat of use of force which reasonably causes fear of physical injury." *State* v. *Rodgers,* 198 Conn. 53, 60, 502 A.2d 360 (1985).

The history of § 53a-70 (a) supports this view.[3] Prior to 1975, a person who compelled sexual assault could be charged with sexual misconduct, a misdemeanor, defined in General Statutes § 53a-71 (a) as sexual intercourse with a female without her consent, or rape, a felony, defined in General Statutes § 53a-72 (a) as sexual intercourse with a female by forcible compulsion. General Statutes (Rev. to 1975) § 53a-66 states that "[l]ack of consent results from (1) forcible compulsion . . . ." General Statutes (Rev. to 1975) § 53a-65 (8) defines forcible compulsion as "physical force that overcomes earnest resistance; or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person, or in fear that he or another person will immediately

---

[3] In a discussion of sexual assault of an unconscious person, this court stated that General Statutes § 53a-70, as revised by Public Acts 1975, No. 75-619, contained the element of sexual intercourse by forcible compulsion, one element of rape formerly contained in General Statutes § 53a-72. *State* v. *Rodgers,* 198 Conn. 53, 61, 502 A.2d 360 (1985).

be kidnapped." Forcible compulsion, therefore, encompassed both the use of force and the threat of use of force.

In 1975, the legislature revised § 53a-70 (a)[4] to change compelled sexual assault from a misdemeanor to a felony and to include within the statute's purview assaults in which the victim does not resist.[5] As Justice Berdon notes in the majority opinion, Senator Betty Hudson stated that "[t]he present statute requires that there be force, force enough . . . to overcome earnest resistance, whatever that means. Well in most rape cases, there is no resistance. In fact, in eighty-seven percent of rape cases, there is no resistance and there is no resistance because the rapist has a knife or a gun and threatens the woman's life or that of her child." 18 S. Proc., Pt. 7, 1975 Sess., p. 3222. The force that Senator Hudson is referring to is force that had been required by the victim, not the rapist.

Use of force and threat of use of force have never been considered statutory alternatives. Beginning with the definition of forcible compulsion, using force and threatening to use force have been considered two methods of compelling sexual assault. Contrary to Justice Berdon's assertion, the history of § 53a-70 supports

---

[4] Section 3 of No. 75-619 of the 1975 Public Acts revised General Statutes § 53a-70 (a) to read: "A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or (2) by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

The designation (2) was retained from the previous wording of § 53a-70 (a), which had distinguished between persons less than eighteen years of age and persons in the custody of the law or detained in a hospital. General Statutes (Rev. to 1981) § 53a-70 (a) does not include this numerical designation.

[5] General Statutes § 53a-72 was repealed at the same time. Public Acts 1975, No. 75-619, § 7.

the contention that use of force and threat of use of force have always been considered together, and does not indicate an intent to separate them.

We have previously held that the trial court did not unconstitutionally enlarge the offense when the court instructed the jury on either use of force or threat of use of force even though the information only stated use of force. *State* v. *Franko,* 199 Conn. 481, 488–89, 508 A.2d 22 (1986). Recently, we held that the alternatives, use of force and threat of use of force, are not conceptually distinct and, therefore, that no unanimity instruction is required regarding which method was used to compel sexual intercourse. *State* v. *Tucker,* supra. " '[T]he element of compulsion, the utter subjugation of the victim's free will, is no different in character if it results from the raised fist or the first blow. . . . [W]e are convinced that the phrase "use or threat of force or violence" is a sound and reasonable attempt to capture the essence of the proscribed conduct [sexual assault] . . . .' " Id., 648, quoting *State* v. *Baldwin,* 101 Wis. 2d 441, 450–52, 304 N.W.2d 742 (1981); see also *State* v. *Milardo,* 224 Conn. 397, 413, 618 A.2d 1347 (1993) (although compelled sexual intercourse may be performed in several ways, General Statutes § 53a-65 [2] defines only one offense). Because we have already held that use of force and threat of use of force are not conceptually distinct, and because they have consistently been grouped together as constituting the element of compulsion required to commit sexual assault, the use of force and threat of use of force cannot be statutory alternatives.

In addition, the trial court charged the jury on use of force and threat of use of force even though the information did not state that the defendant had threatened to use force. We disapprove of the practice of reading an entire statute in the charge to the jury where the pleadings or the evidence support only a portion of the

statute. *State* v. *James,* 211 Conn. 555, 583, 560 A.2d 426 (1989). Any error derived from the fact that the jury charge did not conform to the information, however, is harmless beyond a reasonable doubt.

" ' "The harmless error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, *United States* v. *Nobles,* 422 U.S. 225, 230 [95 S. Ct. 2160, 45 L. Ed. 2d 141] (1975), and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." ' *Rose* v. *Clark,* 478 U.S. 570, 577, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986), quoting *Delaware* v. *Van Ardsdall,* 475 U.S. 673, 681, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)." *Bunkley* v. *Commissioner of Correction,* 222 Conn. 444, 460, 610 A.2d 598 (1992). The proper harmless error inquiry is whether the error affected the outcome of the case. *State* v. *Belle,* 215 Conn. 257, 268, 576 A.2d 139 (1990).

I am not persuaded that it is more probable than not that the jury's verdict was affected by the erroneous instruction. The information stated and all the evidence presented at trial demonstrated that the assault was accomplished by the use of force. No evidence suggested that the defendant threatened to use force. The court instructed the jury to consider only the evidence admitted at trial in reaching a verdict. The jury charge taken as a whole and this court's holding in *State* v. *Tucker,* supra, that the use of force and the threat of the use of force are not conceptually distinct indicate that any error was harmless beyond a reasonable doubt.

Accordingly, I would reverse the judgment of the Appellate Court and affirm the judgment of the trial court.