### STATE OF CONNECTICUT *v.* DONALD L. CHAPMAN (11692)

LAVERY, LANDAU and SCHALLER, Js.

---

Argued September 27—decision released December 14, 1993

*Ira B. Grudberg,* with whom, on the brief, was *Thomas W. Ude, Jr.,* for the appellant (defendant).

*Marcia A. Pillsbury,* assistant state's attorney, with whom were *Lawrence J. Tytla,* assistant state's attorney, and, on the brief, *C. Robert Satti, Sr.,* state's attorney, for the appellee (state).

LAVERY, J. The defendant, Donald L. Chapman, appeals from the judgment of conviction of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1),[1] risk of injury to a child in vio-

---

[1] General Statutes § 53a-71 (a) provides in pertinent part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under sixteen years of age . . . ."

lation of General Statutes § 53-21,[2] and sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A).[3] The defendant claims that the trial court improperly (1) denied his motion for change of venue, (2) refused to question the jurors about possible exposure to trial publicity, and (3) altered his sentence after execution. We affirm the judgment of the trial court.

The defendant, a resident of Ledyard, was accused of sexually assaulting a twelve year old girl on numerous occasions in 1987. He was tried before a jury in July, 1992. At the time of trial, the defendant was free on bond pending his appeal of an earlier unrelated rape conviction.[4] The defendant requested a transfer of the prosecution[5] claiming that pretrial publicity about his prior rape conviction made a fair trial impossible. The trial court denied the request.

During the trial, two local newspapers published a total of eight articles about the proceedings. The defendant moved for mistrial and repeatedly sought to have the court ask the jurors about possible exposure to the publicity. The court asked the jurors whether they had seen the news coverage. None had. The motion for mistrial and all subsequent requests to poll the jury were denied.

---

[2] General Statutes § 53-21 provides in pertinent part: "Any person who wilfully or unlawfully . . . does any act likely to impair the health or morals of any such child, shall be fined . . . or imprisoned . . . ."

[3] General Statutes § 53a-73a (a) provides in pertinent part: "A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . ."

[4] His conviction was reversed on appeal. *State* v. *Chapman*, 28 Conn. App. 360, 369, 610 A.2d 1328 (1992), aff'd, 227 Conn. 616, 631, 632 A.2d 674, motion for reconsideration en banc granted, 227 Conn. 616, 617 n., 632 A.2d 674 (1993).

[5] The defendant couched his request as a motion for change of venue. We presume that he moved for a Transfer of Prosecution pursuant to Practice Book § 835. See footnote 6.

The defendant was convicted on all charges and sentenced to twenty-five years in prison, execution suspended after sixteen years. After a lengthy appeal bond hearing, the court stated that the sentence imposed was to be served consecutive to any prior sentence. This appeal resulted.

## I

The defendant claims that the trial court abused its discretion by denying his motion for change of venue. He claims that publicity about the trial and his previous conviction deprived him of his right to a fair trial. We disagree.

In requesting a change of venue, the movant must demonstrate that a fair and impartial trial is not otherwise possible. *State* v. *Townsend,* 211 Conn. 215, 224, 558 A.2d 669 (1989). A transfer is necessary if, in the discretion of the trial court, the location of the pending case precludes a fair and impartial trial. Practice Book § 835;[6] *State* v. *Townsend,* supra, 224–25. On appeal, the " 'grave constitutional implications attending' " motions for transfer require that appellate tribunals independently evaluate the circumstances. *State* v. *Pelletier,* 209 Conn. 564, 568, 552 A.2d 805 (1989), quoting *Sheppard* v. *Maxwell,* 384 U.S. 333, 362–63, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966). Our review of the record convinces us that publicity did not deprive the defendant of a fair and impartial trial.

For a conviction to be reversed on the ground of prejudicial publicity, the defendant must prove actual juror prejudice. *State* v. *Townsend,* supra, 225. Actual prejudice, however, need not be shown "in extreme cir-

---

[6] Practice Book § 835 provides in pertinent part that "the judicial authority may order that any pending criminal matter be transferred to any other court location:

"(1) If the judicial authority is satisfied that a fair and impartial trial cannot be had where the case is pending . . . ."

cumstances where there has been inherently prejudi-
cial publicity such as to make the possibility of preju-
dice highly likely or almost unavoidable. . . ."
(Citations omitted; internal quotation marks omitted.)
Id.; *State* v. *Piskorski,* 177 Conn. 677, 686, 419 A.2d
866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L.
Ed. 2d 194 (1979). In the present case, the defendant
has failed to show either "inherently prejudicial" pub-
licity or actual prejudice.

No mathematical formula defines "inherently preju-
dicial" publicity. Courts have presumed prejudice and
overturned convictions where the attendant publicity
created a "circus atmosphere." See *Sheppard* v. *Max-
well,* supra, 356–57 (live television broadcast of three
day, pretrial examination of defendant, unassisted
by counsel); *Estes* v. *Texas,* 381 U.S. 532, 550–51, 85
S. Ct. 1628, 14 L. Ed. 2d 543 (1966) (intrusive televi-
sion presence in courtroom); *Rideau* v. *Louisiana,* 373
U.S. 723, 724, 83 S. Ct. 1417, 10 L. Ed. 2d 663 (1963)
(repeated television broadcast of defendant's "con-
fession"). The defendant has failed to persuade us,
however, "that the news coverage created a 'trial
atmosphere . . . utterly corrupted by press cover-
age.' " *State* v. *Pelletier,* supra, 570, quoting *Murphy*
v. *Florida,* 421 U.S. 794, 798, 95 S. Ct. 2031, 44 L.
Ed. 2d 589 (1975).

The publicity regarding this case was not extensive.
Cf. *State* v. *Pelletier,* supra. The defendant focuses on
eight articles in two local newspapers that referred to
the defendant's earlier conviction.[7] He maintains that

_____

[7] The defendant cited twenty articles in total. Two of the articles were
nothing more than news accounts of the defendant's buying a stable, and
a fire at the property. The remaining articles dealt solely with the first trial
and conviction, and were published months before the jury was selected
for this trial. See *State* v. *Miller,* 202 Conn. 463, 477, 522 A.2d 249 (1987)
(noting that significant delay between publicity and trial lessens likelihood
of prejudice).

his prior conviction could not have been admitted at trial without severe limitations on its use, and therefore, its publication was inherently prejudicial. The stories, however, were neither inflammatory nor inaccurate. Id. They were "straight news stories rather than invidious articles [that] would tend to arouse ill will and vindictiveness." *State* v. *Townsend,* supra, 227; *State* v. *Pelletier,* supra, 570. The reports were free from sensationalism, accurate and largely factual. Therefore, these facts fail to rise to the level of inherent prejudice. See *State* v. *Piskorski,* supra, 689.

The defendant has also failed to demonstrate actual jury prejudice. In evaluating this claim, "we examine the record to determine whether the method of jury selection or the characteristics of the jurors selected deprived the defendant of his constitutional right to a fair trial." Id., 225–26. Our review reveals no such deprivation.

The court excused all venirepersons who remembered any of the pretrial publicity. None of the selected jurors recalled that the defendant or his farm had been in the news. The jury was impanelled in two days and the defendant used only seven of his nine peremptory challenges. The record contains no evidence of juror prejudice. Further, the defendant presents no evidence that the jury even saw, let alone was tainted by, midtrial publicity. We conclude, therefore, that there was no actual juror prejudice.

The defendant has failed to demonstrate inherently prejudicial publicity or actual jury prejudice. Thus, the trial court's denial of his motion for change of venue was not an abuse of discretion.

## II

The defendant next claims that the trial court improperly refused to question the jurors during the course

of the trial about possible exposure to trial publicity. Our review of the record convinces us that the trial court did not abuse its discretion.

During the trial, the defendant raised the issue of possible juror prejudice from newspaper articles. The court, on one occasion, polled the jury about exposure to publicity. None of the jurors reported any exposure. The defendant's subsequent requests to poll the jury, after additional publicity, were denied. The defendant argues that the trial court's denial was an abuse of discretion. We disagree.

"[A] defendant's right to a jury trial guarantees him that it will be conducted fairly by a panel of impartial jurors; *State* v. *Ziel,* 197 Conn. 60, 64, 495 A.2d 1050 (1985); *State* v. *Migliaro,* 28 Conn. App. 388, 395, 611 A.2d 422 (1992); and that the jury will decide the case solely on the basis of the evidence and arguments presented before it . . . . *State* v. *Rodriguez,* 210 Conn. 315, 325, 554 A.2d 1080 (1989). *Where it appears* during the course of a trial that the jury panel may have been exposed to prejudicial extrinsic evidence, the trial court must conduct . . . an investigation to determine whether jury misconduct occurred. See *State* v. *Migliaro,* supra, 396. There is no magic formula that the trial court must follow in conducting this inquiry. Rather, it must use *whatever inquisitorial tools are necessary and appropriate* to determine whether there was a reasonable possibility of prejudice." (Emphasis added; internal quotation marks omitted.) *State* v. *Leonard,* 31 Conn. App. 178, 194, 623 A.2d 1052, cert. granted on other grounds, 226 Conn. 912, 628 A.2d 985 (1993). The trial judge is best situated and uniquely qualified to appraise possible juror misconduct. Id., 195. Thus, the trial court's broad discretion will be afforded great weight. Id.

When, after the first day of testimony, the defendant moved for a mistrial due to possible juror exposure, the court polled the jury. No juror reported having been exposed to the publicity. In fact, the judge remarked that the jurors seemed surprised to have been asked. Such an inquiry was an entirely appropriate form of investigation. See id., 194.

After additional newspaper coverage, the defendant requested further inquiry of the jurors. These requests were denied. The judge stated his satisfaction that the jurors were not being exposed. Where it does not appear that the jury is being exposed, the court need not conduct any investigation. See id.

In the present case, the trial court properly exercised its discretion. Before the trial began, the court instructed the jury to avoid the local newspapers. After questioning the jury about possible exposure, and at the end of each day during the trial, the court admonished the jurors to avoid the local newspapers. The defendant has presented no evidence of juror misconduct. Absent evidence to the contrary, jurors are presumed to follow the court's instructions. Id., 196. We will not, on appeal, speculate on what jurors might have seen and its possible effects. See id.

The trial court did not abuse its discretion by repeatedly refusing to question the jury about possible exposure to publicity.

### III

The defendant's final claim is that the trial court improperly increased his sentence after execution by making it consecutive to the sentence imposed after his first conviction.[8] The jury convicted the defendant

---

[8] On conviction by a jury of sexual assault in the first degree, the defendant was sentenced to a term of fourteen years, execution suspended after seven years. His conviction was reversed on appeal to this court. *State* v. *Chap-*

on July 17, 1992; he was sentenced on August 14. Immediately after announcing the sentence, the trial court set an appeal bond. A hearing on the defendant's request to post a real estate bond followed. After denying the defendant's request to post a real estate bond, the court announced that the defendant's sentence would run consecutive, not concurrent, to his prior sentence. The defendant claims that the trial court's conduct violated his state and federal constitutional rights against double jeopardy and to due process.

"Ordinarily a sentence may not be modified if any act is done in execution of it." *State* v. *Nardini,* 187 Conn. 109, 123, 445 A.2d 304 (1982). Once commenced, a trial court cannot modify a valid sentence unless expressly authorized by statute. *State* v. *Luzietti,* 32 Conn. App. 1, 4, 628 A.2d 8, cert. granted, 227 Conn. 919, 632 A.2d 697 (1993). A sentence commences when custody is transferred from the court to the custodian of the penal institution. General Statutes § 53a-38 (a) (sentence commences "when the prisoner is received in the custody or institution to which he was sentenced"); *State* v. *Walzer,* 208 Conn. 420, 424–25, 545 A.2d 559 (1988). The defendant passes into the jurisdiction of the commissioner of correction when a judgment of mittimus is issued. *State* v. *Walzer,* supra, 425–26; see also *Moscone* v. *Manson,* 185 Conn. 124, 129, 440 A.2d 848 (1981) (sentence commences only upon incarceration); *State* v. *Adams,* 14 Conn. App. 119, 133, 539 A.2d 1022 (1988) (sentence had not commenced because mittimus had not yet been drafted); *State* v. *Elliott,* 8 Conn. App. 566, 575, 513 A.2d 1285, cert. denied, 201 Conn. 813, 517 A.2d 630 (1986) (date

*man,* 28 Conn. App. 360, 363, 369, 610 A.2d 1328 (1992), aff'd, 227 Conn. 616, 632 A.2d 674 (1993). Our Supreme Court granted the state's motion to reconsider its ruling en banc on October 5, 1993. *State* v. *Chapman,* supra, 227 Conn. 617 n. If this court's judgment is upheld, this issue is moot. Since the case is being reconsidered, however, we will address the issue as briefed.

of issuance of mittimus indicates commencement of sentence). At this point, the court's jurisdiction over the prisoner terminates. *State* v. *Luzietti,* supra.

The record clearly reveals that the defendant's sentence had not commenced before the trial court's alteration. Immediately after announcing sentence, the trial court set an appeal bond and held a hearing on the defendant's request for a real estate bond. At the conclusion of the hearing, the defendant posted bond and left. No act occurred in execution of the sentence. The defendant was not transferred to the custody of the penal institution to which he was sentenced. No mittimus was issued.

Because the defendant never commenced his sentence, the court never lost jurisdiction over him. Thus, the trial court had the authority to clarify the sentence after the bond hearing without violating the defendant's constitutional rights.

The judgment is affirmed.

In this opinion the other judges concurred.