STATE OF CONNECTICUT *v.* LAWRENCE TOWNSEND
(13386)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued March 28—decision released May 16, 1989

*William F. Gallagher,* special public defender, with whom, on the brief, was *Robert P. Borquez,* special public defender, for the appellant (defendant).

*Donald A. Browne,* state's attorney, with whom, on the brief, was *Henry J. Lyons,* assistant state's attorney, for the appellee (state).

PETERS, C. J. The principal issue in this appeal is whether the trial court erred in allowing self-representation by a defendant who adamantly sought to exercise this constitutional right. A jury found the defendant, Lawrence Townsend, guilty of murder in violation of General Statutes § 53a-54a. He appeals to this court from the judgment thereafter rendered by the trial court sentencing him to life imprisonment. We find no error.

The parties do not dispute the relevant facts. On the morning of February 18, 1986, the defendant entered the Gary Crooks Center in Bridgeport carrying a rifle under his coat and looking for the victim, Joseph Kelly. The defendant found and shot the victim, who died as a result of his gunshot wounds.

The evidence at trial also included the defendant's oral statement made upon his arrest. In his statement he admitted shooting the victim, explaining that he had done so because the victim had insulted the defendant's wife. The defendant stated that he was a Muslim, and Muslim law permitted him to kill any person who insulted his wife.

Before trial, the defendant informed the trial court, *Reilly, J.,* that he intended to represent himself at trial. The court advised him of his right to self-representation

or to representation by counsel, and told him it would appoint a public defender if the defendant desired. The defendant repeatedly declined counsel. The trial court warned him of the disadvantages of self-representation and canvassed him as to his education and prior experience with the legal system. After this colloquy the court agreed to allow the defendant to exercise his constitutional right to represent himself, but, over the objections of both the defendant and the public defender's office, appointed the public defender's office as standby counsel in the event the defendant should want to consult with an attorney during trial. Subsequently, a special public defender was appointed to represent the defendant.

The defendant also made two motions for a change of venue. The trial court, *Curran, J.,* denied the first motion because the defendant had presented no evidence warranting such a change. The defendant renewed his motion before the trial court, *McKeever, J.,* which, upon completion of the jury voir dire, denied the motion, finding "no actual bias" in any of the selected jurors or alternates.

After the state had put on its case over the course of two days, the defendant presented no evidence or witnesses on his behalf. The defendant had cross-examined a witness for the state concerning the defendant's own mental state just before the shooting. In his summation the defendant briefly stated that he "did not calculate any of these events" and that "what you heard and the witness says is what transpired."

The trial court instructed the jury on murder and on first and second degree manslaughter. The jury found the defendant guilty of murder and the trial court sentenced him to life imprisonment. On appeal the defendant claims that the trial court erred in allowing him to represent himself and in denying his motions for a change of venue.

I

The defendant's claim that the trial court erred in allowing him to represent himself at trial comes to us in two versions. First, he claims that the trial court did not properly determine his competency "knowingly and intelligently" to waive his right to representation by counsel. Second, he claims that the trial court failed to comply with Practice Book § 961. We disagree with both claims.

Neither party disputes that a defendant has an inherent right, under our federal and state constitutions,[1] to represent himself at trial should he choose to do so. *McKaskle* v. *Wiggins,* 465 U.S. 168, 173–74, 104 S. Ct. 944, 79 L. Ed. 2d 122, reh. denied, 465 U.S. 1112, 104 S. Ct. 1620, 80 L. Ed. 2d 148 (1984); *Faretta* v. *California,* 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *State* v. *Williams,* 203 Conn. 159, 167, 523 A. 2d 1284 (1987); *State* v. *Carter,* 200 Conn. 607, 611, 513 A. 2d 47 (1986); *State* v. *Gethers,* 197 Conn. 369, 376, 497 A. 2d 408 (1985) (*Gethers II*); *State* v. *Gethers,* 193 Conn. 526, 532–33, 480 A.2d 435 (1984) (*Gethers I*). In electing to defend himself, however, a defendant waives his right to representation by counsel, another fundamental constitutional right recognized by our federal and state constitutions, and waives all of

---

[1] The sixth amendment to the United States constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." In *Faretta* v. *California,* 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), the United States Supreme Court held that "the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment." Id., 819. Article first, § 8, of the Connecticut constitution is even more explicit: "In all criminal prosecutions, the accused shall have a right to be heard *by himself* and by counsel . . . . " (Emphasis added.) Thus, we have held that our state constitution also guarantees a defendant the right to represent himself. *State* v. *Gethers,* 193 Conn. 526, 532–33, 480 A.2d 435 (1984); see also *Faretta* v. *California,* supra, 813 n.10.

the benefits that traditionally attend that right, about which the United States Supreme Court has held "that the help of a lawyer is essential to assure the defendant a fair trial."[2] *Faretta* v. *California,* supra, 832–33; see also *Argersinger* v. *Hamlin,* 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972); *Gideon* v. *Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); *Johnson* v. *Zerbst,* 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); *Powell* v. *Alabama,* 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 158 (1932); *Gethers II,* supra. Thus, to accommodate this inherent tension the court has held that "in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Faretta* v. *California,* supra, 835; *Von Moltke* v. *Gillies,* 332 U.S. 708, 723–24, 68 S. Ct. 316, 92 L. Ed. 309 (1984); see *Johnson* v. *Zerbst,* supra, 464–65.

Practice Book § 961[3] "was adopted in order to implement the right of a defendant in a criminal case to act as his own attorney in defending himself . . . . "

---

[2] The United States Court of Appeals for the Second Circuit has stated: "The right to counsel and the right to defend pro se in criminal cases form a single, inseparable bundle of rights, two fases [sic] of the same coin. Thus we find the choice between the two sometimes discussed in terms of waiver of the right to counsel, and sometimes in terms of an election to have a lawyer or to defend pro se." *United States* v. *Plattner,* 330 F.2d 271, 276 (2d Cir. 1964).

[3] "[Practice Book] Sec. 961.——WAIVER

"A defendant shall be permitted to waive his right to counsel and shall be permitted to represent himself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a through inquiry and is satisfied that the defendant:

"(1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;

"(2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent himself;

"(3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and

"(4) Has been made aware of the dangers and disadvantages of self-representation."

*Gethers I,* supra, 532. Section 961 requires the judicial authority, before allowing a defendant to represent himself, to make a thorough inquiry to satisfy itself that the defendant: (1) has been advised of his right to assistance of counsel; (2) possesses sufficient intelligence and capacity to appreciate the consequences of his choice; (3) comprehends the nature of the charges, proceedings, punishment and other facts necessary to a broad understanding of the case; and (4) is aware of the dangers and disadvantages of self-representation. The defendant contends that the trial court did not sufficiently canvass him to determine that he possessed sufficient intelligence to appreciate the consequences of self-representation and also did not determine that he comprehended the nature of the charges and proceedings. In short, he argues that the court should have held a competency hearing to determine his competence to represent himself. We conclude that the trial court sufficiently canvassed the defendant.

"When the right to have competent counsel ceases as the result of a sufficient waiver, the right of self-representation begins." *Gethers I,* supra, 534. Put another way, a defendant properly exercises his right to self-representation by "knowingly and intelligently" waiving his right to representation by counsel. Because this is so, Practice Book § 961 "cannot be construed to require anything more for an effective waiver of counsel than is constitutionally mandated, because such a waiver triggers the constitutional right of an accused to represent himself." Id. Thus, the defendant's dual arguments as to this claim devolve into a single inquiry: did the defendant "knowingly and intelligently" waive his right to representation by counsel and thus properly exercise his right to self-representation?

" '[W]hether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear

upon the record.' " *Gethers I,* supra, 534, quoting *Johnson* v. *Zerbst,* supra, 465. The caselaw and commentary indicate, as does Practice Book § 961, that in order to find that a defendant has "knowingly and intelligently" waived his right to counsel, and thus has elected to exercise his right to self-representation, a trial court should inform the defendant of his right to counsel and that the dangers and disadvantages of self-representation make it most often advisable to have counsel. Further, the court should ascertain, through an appropriate inquiry, that the defendant possesses the intelligence and capacity to make the choice and to appreciate the consequences of his decision to represent himself. *Faretta* v. *California,* supra, 835–36; *United States* v. *Plattner,* 330 F.2d 271, 276 (2d Cir. 1964); *Gethers I,* supra, 534–36; 2 W. LaFave & J. Israel, Criminal Procedure (1984) § 11.5 (c), pp. 44–47. Some of the factors bearing on the defendant's capacity include age, education, mental health, prior experience with criminal trials and consultation with counsel prior to proceeding pro se, although none of these inquiries is a constitutional necessity. 2 W. LaFave & J. Israel, supra, p. 46.[4] However, "a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation . . . . " *Faretta* v. *California,* supra, 835. Rather a record that " 'affirmatively shows that [he] was literate, competent, and understanding, and that he was voluntarily exercising his informed free will' " sufficiently supports a waiver. Id.; *Gethers I,* supra, 536.

---

[4] In *Faretta* v. *California,* 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), the court suggested three grounds for denying a defendant his right to self-representation: (1) he makes the request in untimely fashion such that granting it would disrupt the proceedings; id., 807; (2) the defendant engages in serious obstructionist misconduct; id., 834 n.46; and (3) the defendant has not "knowingly and intelligently" waived his right to counsel. Id., 835; see 2 W. LaFave & J. Israel, Criminal Procedure (1984) § 11.5 (d), pp. 47–49.

In this case we conclude that the record amply supports the trial court's determination that the defendant "knowingly and intelligently" waived his right to counsel. See *Gethers II,* supra, 381. In response to the trial court's inquiry, the defendant stated emphatically and unequivocally that he wanted to waive his right to counsel. The court informed him that he had a constitutional right to counsel and that the court would appoint counsel for him should he so desire. The defendant declared that he did not want the public defender's office to represent him, nor did he want a special public defender. He stated that he believed that the public defender's office "sell[s] people out" and did not think it would protect his rights. He also made it clear that he objected to having standby counsel, appointed by the trial court, communicate with the prosecution or in any way interfere with the presentation of his case.

The trial court, through a colloquy with the defendant, discerned that he had attended school through the twelfth grade and had previously had four jury trials. It found that at one of these trials he had represented himself and at another had served as co-counsel. The trial court explained, and the defendant stated that he understood, that the murder charge he faced was much more serious than any charge he had previously faced and that a twenty-five year minimum and a sixty year maximum sentence awaited him if convicted. The trial court further explained that to assist with filing motions and to advise him on evidentiary rulings, it thought "it would be a darn good idea if you could have an attorney that you can turn to." The court further indicated that the case would be complex and take a good deal of time.

At the pretrial conference, the court again advised the defendant of his rights to counsel and against self-incrimination, and discussed with him the maximum possible sentence. The court also counseled the defend-

ant that he was at a "distinct disadvantage in trying the case [himself], as to the rules of evidence and other procedural matters at time of trial," and that it was in his "best interest to have a competent member of the bar to be able to assist [him] in any matters that [he] might want before the Court."

The teaching of *Faretta* is that a court may not force counsel upon a defendant because "where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly." *Faretta* v. *California,* supra, 834. Because "[t]he right to defend is given directly to the accused"; id., 819–20; "unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction." Id., 821. Thus, to "force a lawyer on a defendant can only lead him to believe that the law contrives against him." Id., 834.

It is abundantly clear in this case that in denying the defendant the right to represent himself, the trial court would have been forcing counsel upon an unwilling defendant. By appointing standby counsel and encouraging, but not forcing, the defendant to use him, the trial court scrupulously honored the defendant's right to self-representation, while it also protected his right to counsel and the state's interest in adequate representation for its citizens. Cf. *McKaskle* v. *Wiggins,* supra, 176; *Faretta* v. *California,* supra, 834 n.46; comment, "Mandatory Advisory Counsel for Pro Se Defendants: Maintaining Fairness in the Criminal Trial," 72 Cal. L. Rev. 697 (1984). Thus, the trial court did not err in allowing the defendant to proceed to trial pro se.[5]

---

[5] The defendant now points out that he failed, to his detriment, to challenge some jurors for cause, cross-examine many of the state's witnesses or call witnesses of his own. He also claims that he prejudiced himself by admitting to the jury in his closing statement that "what you heard and

## II

The defendant also claims that the trial court erred in denying his motions for a change of venue. He argues that the court should have found actual and inherent juror prejudice because five jurors who eventually sat on the panel "had heard about the matter prior to voir dire," and because of the many articles written about him and his case in the Bridgeport newspapers. The defendant introduced into evidence photocopies of forty articles published in the Bridgeport Post and Bridgeport Telegram detailing the circumstances of the case. Some of the articles alluded to his prior membership in the Black Panthers during the early 1970s, his prior criminal record and reports of other alleged misconduct on his part. Some articles also reported a pretrial conference which because of "security restrictions" the trial court held in open court rather than in chambers. At the conference the defendant, proceeding pro se, had rejected the state's offer of a fifty year sentence in exchange for a plea of guilty to murder. The defendant did offer to plead guilty in exchange for a five year sentence, to which the trial court responded, "[l]ots of luck." The court found the parties too far apart for useful negotiation and set the matter down for trial. Later, it refused to transfer the case to another venue.

In requesting a change of venue, a defendant bears the burden of showing that he could not otherwise receive a fair and impartial trial. The trial court exercises its discretion in deciding whether to grant such a change of venue. *State* v. *Miller,* 202 Conn. 463, 477,

---

the witness says is what transpired." While we do not necessarily agree that the defendant's actions prejudiced him or were inconsistent with his defense at trial, we note that such subsequent actions were not within the trial court's cognizance at the time it allowed the defendant to proceed pro se, and therefore did not affect its finding that he had "knowingly and intelligently" waived his right to counsel.

522 A.2d 249 (1987); *State* v. *Piskorski,* 177 Conn. 677, 685, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). The trial court's discretion is governed by Practice Book § 835 (1), which provides: "Upon motion of the prosecuting authority or the defendant, or upon his own motion, the judicial authority may order that any pending criminal matter be transferred to any other court location: (1) If the judicial authority is satisfied that a fair and impartial trial cannot be had where the case is pending . . . ."

For an appellate court to reverse a conviction on the grounds of prejudicial pretrial publicity, a defendant generally must prove actual juror prejudice. *State* v. *Pelletier,* 209 Conn. 564, 569, 552 A.2d 805 (1989); *State* v. *Piskorski,* supra, 686; *State* v. *Hart,* 169 Conn. 428, 432–33, 363 A.2d 80 (1975). A defendant need not, however, show actual prejudice " 'in extreme circumstances where there has been inherently prejudicial publicity such as to make the possibility of prejudice highly likely or almost unavoidable. See *Estes* v. *Texas,* 381 U.S. 532, 542–43, 85 S. Ct. 1628, 14 L. Ed. 2d 543, [reh. denied, 382 U.S. 875, 86 S. Ct. 18, 15 L. Ed. 2d 118] (1966).' *Calley* v. *Callaway,* 519 F.2d 184, 204 (5th Cir.), cert. denied, [sub nom. *Calley* v. *Hoffman,*] 425 U.S. 911, 96 S. Ct. 1505, 47 L. Ed. 2d 760 [1976]." *State* v. *Piskorski,* supra, 686.

With regard to actual prejudice, jurors need not be totally ignorant of the facts and issues involved in a criminal trial and the fact that some jurors have some prior knowledge about the case does not itself constitute identifiable jury prejudice. *Dobbert* v. *Florida,* 432 U.S. 282, 303, 97 S. Ct. 2290, 53 L. Ed. 2d 344 (1977); *Murphy* v. *Florida,* 421 U.S. 794, 799–800, 95 S. Ct. 2031, 44 L. Ed. 2d 589 (1975); *State* v. *Pelletier,* supra, 571; *State* v. *Marra,* 195 Conn. 421, 433, 489 A.2d 350 (1985). Rather, we examine the record to determine whether the method of jury selection or the characteris-

tics of the jurors selected deprived the defendant of his constitutional right to a fair trial. *Dobbert* v. *Florida,* supra, 303; *State* v. *Miller,* supra, 479; *State* v. *Marra,* supra, 430–31; see also *Patton* v. *Yount,* 467 U.S. 1025, 1035, 104 S. Ct. 2885, 81 L. Ed. 2d 814 (1984). A review of the record demonstrates that such a deprivation did not occur in this case.

Only four of the five jurors the defendant now challenges had read accounts of the case in the newspaper around the time of the incident and the defendant's subsequent arrest.[6] None had read any newspaper accounts during the weeks immediately preceding the voir dire, nor had any seen reports in any other medium. All five represented that, despite anything they had read, they would be able to evaluate the evidence impartially and to follow the court's instructions faithfully. Finally, the defendant did not challenge any of the five for cause, and, when asked by the trial court, accepted each as a juror. Thus, we conclude that the trial court did not err in finding no actual prejudice in the jury panel.

As to inherent prejudice, the defendant argues that the pretrial publicity in the Bridgeport area newspapers made " 'the possibility of prejudice highly likely or almost unavoidable.' " *State* v. *Piskorski,* supra, 686. " 'There is no mathematical formula to determine when the burden of proof should be on the accused to show actual bias or when the facts reveal inherent prejudices.' " *State* v. *Piskorski,* supra, 686, quoting J. Stanga, "Judicial Protection of the Criminal Defendant Against Adverse Press Coverage," 13 Wm. & Mary L. Rev. 1, 68 (1971). The publicity attending this case, however, did not approach the "circus atmosphere"

---

[6] The other challenged juror did not recall ever having read anything about the case. Further, the defendant does not claim specifically that any of the five jurors had read any of the newspaper articles he submitted as exhibits.

that has caused the United States Supreme Court to "presume prejudice" and overturn convictions because of pretrial publicity. See also *Estes* v. *Texas,* supra, 550–51; *Sheppard* v. *Maxwell,* 384 U.S. 333, 362–63, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966); *Rideau* v. *Louisiana,* 373 U.S. 723, 724–25, 83 S. Ct. 1417, 10 L. Ed. 2d 663 (1963). The defendant's claim on appeal focuses on newspaper articles, rather than on television or radio coverage, as having caused pretrial prejudice. Cf. *Rideau* v. *Louisiana,* supra, 726 ("[F]or anyone who has ever watched television the conclusion cannot be avoided that this spectacle . . . in a very real sense *was* Rideau's trial"). The articles he offered into evidence were " 'straight news stories rather than invidious articles [that] would tend to arouse ill will and vindictiveness.' " *State* v. *Pelletier,* supra, 570, quoting *Beck* v. *Washington,* 369 U.S. 541, 556, 82 S. Ct. 955, 8 L. Ed. 2d 98, reh. denied, 370 U.S. 965, 82 S. Ct. 1575, 8 L. Ed. 2d 834 (1962). "Moreover, there was a significant delay between the majority of the publicity and the time of trial, which lessens the likelihood of jury bias." *State* v. *Miller,* supra, 478; see also *Patton* v.*Yount,* supra, 1034; *Murphy* v. *Florida,* supra, 802.[7]

The defendant claims that two articles, one in the Bridgeport Telegram and another in the Bridgeport

[7] Only two of the forty articles the defendant submitted were published less than three months before the beginning of the jury voir dire. At least twelve of the articles were published between February 19, 1986, and September 18, 1986, the period just after the incident and during which time the authorities could not locate the defendant.

Furthermore, the defendant himself contributed to some of the pretrial publicity. Reporters based at least three of the submitted articles on interviews the defendant granted while in pretrial detention. In the articles the defendant recounted his sixteen months as a fugitive and stated that he intended to call on former associates in the Black Panthers to aid him in this case. See *State* v. *Rodriguez,* 210 Conn. 315, 328 n.10, 554 A.2d 1080 (1989).

Post, most particularly prejudiced him.[8] In those articles the newspapers reported that the defendant had agreed at the pretrial conference to plead guilty to the murder charge in exchange for a five year sentence.[9] He now claims that his offer of a guilty plea could be construed as an admission of guilt, and therefore the publication of the possibility of such a plea should have prompted the trial court to presume prejudice and grant the motion for a change of venue. We disagree.

The defendant's argument might have been more persuasive had he disputed the events leading up to the victim's death. His defense appears to have been that he did not "calculate any of these events," and therefore did not have the requisite intent for murder. For this reason the defendant filed a request to charge the jury on lesser offenses. Publicity about plea negotiations, in these circumstances, is not as inherently prejudicial as in a case in which a defendant denies any involvement in a crime, but nonetheless has considered pleading guilty in exchange for a reduced sentence. While the defendant apparently entertained some hope that the jury would find him totally innocent, it would not have been unreasonable, given the facts of this case

---

[8] The two articles ran on August 7, 1987, and their headlines read: "Ex-Panther offers 5 years for plea of guilty" and "Price for guilty plea: Townsend 5 year plan."

[9] As one predicate to his claim of prejudicial pretrial publicity, the defendant now maintains that the trial court erred in relying on "security restrictions" to hold the pretrial conference in open court with the public and press attending. Although the record does not disclose what "security restrictions" prompted the court to hold the pretrial conference in open court rather than in chambers, the defendant never objected to such a procedure until this appeal. Neither does the defendant seek review under the exceptional circumstances stated in *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973). Because "[t]he right of self-representation is not . . . a license not to comply with relevant rules of procedural and substantive law"; *Faretta* v. *California*, 422 U.S. 806, 835 n.46, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); we do not review this claim.

and his own theory of culpability for manslaughter, for the defendant to have pleaded guilty in return for a five year sentence. Information about such plea negotiations therefore could not have led to inherent juror prejudice.

Furthermore, publicity regarding a defendant's confession is potentially more prejudicial than the possibility of a guilty plea, especially given the circumstances of the plea in this case. Pretrial publicity surrounding a defendant's confession has not, however, been held necessarily to create inherent prejudice requiring a change of venue. Cf. *Patton* v. *Yount,* supra.[10] We therefore conclude that the pretrial publicity in this case was not so inherently prejudicial as to abridge the defendant's right to a fair and impartial trial, and thus that the trial court did not abuse its discretion in denying the defendant a change of venue.

There is no error.

In this opinion the other justices concurred.

---

[10] Clearly this case does not rival *Rideau* v. *Louisiana,* 373 U.S. 723, 83 S. Ct. 1417, 10 L. Ed. 2d 663 (1963), upon which the defendant relies, in terms of inherent prejudice. In *Rideau* a television station broadcast a taped interview, made by police during their interrogation of the defendant. In the interview the defendant confessed in detail to his involvement in the alleged kidnapping and murder. Over 53,000 people in a parish of approximately 150,000 viewed the confession on television, including at least three members of the jury. Id., 724–25. The publicity given the defendant's plea bargaining session in the instant case did not approach the "spectacle" in *Rideau* that caused the United States Supreme Court to declare that "[a]ny subsequent court proceedings . . . could be but a hollow formality." Id., 726.