[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON SECOND MOTION FOR CHANGE OF VENUE
On September 28, 1994, after a trial of approximately three weeks in duration before a three judge panel, the defendant, Richard Reynolds, was found guilty of Capital Felony and Murder in connection with the shooting death of Waterbury police officer Walter Williams on December 18, 1992.
By motion dated October 14, 1994, the defendant seeks a change of venue for the trial of the penalty phase to assure the defendant's right to a fair trial on the issue of whether a sentence of death or life imprisonment should be imposed. The state objects to the motion.
The defendant's first motion for change of venue, which was heard prior to the commencement of the trial of the guilt phase, was denied. See Memorandum of Decision dated May 31, 1994, (Fasano, J.). [11 CONN. L. RPTR. No. 19, 594 July 18, 1994)]. The defendant now argues that additional publicity generated since the date of his first motion, the fact of his conviction, and evidence that a much higher percentage of persons surveyed in the Waterbury area believe he should get the death penalty, as compared to the percentage of persons surveyed on this issue in neighboring areas, necessitate a change of venue.
A hearing was held on October 25 and November 1 before the three judge panel. Numerous exhibits, including summations of opinion survey results, newspaper articles, videotapes of television broadcasts with accompanying affidavits and an audiotape of a radio broadcast were introduced into evidence, viewed and considered by the panel. In addition, on October 25, the panel heard testimony from Dr. G. Donald Ferree, Jr., CT Page 11221-E Associate Director of the Institute for Social Inquiry at the University of Connecticut, who supervised the survey of public opinion conducted between April 26 and May 26 of this year. The majority of the panel agrees with the position of the defendant that his second motion for a change of venue should be granted.
The judicial authority may, upon motion, transfer any pending criminal matter to any other court location if the judicial authority is satisfied that a fair and impartial trial cannot be had where the case is pending, or if the defendant and the prosecuting authority consent. Practice Book Section 835.
The right to a fair trial is considered so fundamental that failure to grant a change of venue can violate due process. A defendant usually must prove actual juror prejudice to obtain a reversal on the grounds of prejudicial publicity; however, a defendant does not have to prove actual prejudice in extreme circumstances where there has been inherently prejudicial publicity such as to make the possibility of prejudice highly likely or almost unavoidable. State v. Townsend, 211 Conn. 215,225, 558 A.2d 669 (1989); State v. Pelletier, 209 Conn. 564, 569,552 A.2d 805 (1989); State v. Piskorski, 177 Conn. 677, 685-86,419 A.2d 866, cert. denied, 444 U.S. 935, 100 S.Ct. 283,62 L.Ed.2d 194 (1979).
A defendant cannot rely on the simple fact of extensive news coverage to prove inherently prejudicial publicity, but must demonstrate that the publicity was so inflammatory or inaccurate that it created a trial atmosphere "utterly corrupted by press coverage. Murphy v. Florida, 421 U.S. 794, 798, 95 S.Ct. 2031,2035, 44 L.Ed.2d 589 (1975); see State v. Townsend, 211 Conn. 215
at 226-27, 558 A.2d 669 (1989)." State v. Crafts, 226 Conn. 237,257-58, 627 A.2d 877 (1993).
Still, a change of venue is an exercise of the court's sound discretion. State v. Pelletier, 209 Conn. 564 at 568. Even when there is no showing of actual juror prejudice or inherently prejudicial publicity so inflammatory or inaccurate that a trial atmosphere "utterly corrupted by press coverage" has been created, other concerns — separate from constitutional concerns — may dictate that a court employ its inherent supervisory powers to avoid the possibility of prejudice when protective procedures may not be sufficient in tempering the impact of outside influences after trial begins. Marshall v. U.S., 360 U.S. 310,312, 79 S.Ct. 1171, 1173, 3 L.Ed.2d 1250 (1959) (per curiam); CT Page 11221-FMurphy v. Florida, 421 U.S. 794, 797, 95 S.Ct. 2031, 2035,44 L.Ed.2d 589 (1975); U.S. v. Halderman, 559 F.2d 31 (D.C. Cir. 1976), cert. denied, 431 U.S. 933, 97 S.Ct. 2646, 53 L.Ed.2d 253
(1977); U.S. v. Tokars, 839 F. Sup. 1578, 1584 (N.D. Ga. 1993). See also State v. Duntz, 13 CONN. L. RPTR. No. 1, 18 (January 2, 1995).
Defendant's second motion for change of venue is not, as the state maintains, a reiteration of the first motion denied by Judge Fasano on May 31, 1994. Judge Fasano denied the first motion without prejudice, determining that the voir dire procedure should commence to allow the court further opportunity to uncover the prejudicial effects of any publicity. After voir dire commenced, two jurors out of the first sixteen veniremen were selected and approved by both the defendant and the state. Subsequently, despite any finding of actual juror prejudice, the defendant decided to change his election to a three judge panel for the trial of the guilt phase.
However, there has been a substantial change in circumstances since the end of May. Jurors now will know that three judges convicted the defendant of capital felony and murder. In May of this year, when the change of venue was denied, news coverage of the case had abated significantly since the date of the shooting. Since May, the trial of the guilt phase, which has just ended, has been the subject of extensive coverage in the media. The case frequently made the headlines in Waterbury's major local newspaper.
Media accounts relative to the police version, arrests, background of the suspects and courtroom proceedings before and during the trial of the guilt phase were straightforward, factual and not inflammatory or sensationalized.
In ruling on the defendant's first motion, Judge Fasano was concerned about emotional and prejudicial media accounts regarding the victim, the effect of his death on his family, community reaction, tributes, memorials, and a campaign, named after the victim, to strengthen the death penalty law. However, much of this type of pre-trial publicity was limited, for the most part, to the first month or so following the homicide or was not displayed so prominently to have had any extensive impact.
Unfortunately, the gist of the media publicity subsequent to CT Page 11221-G the guilty verdict has been inflammatory, fomenting a virtual cry to battle to see that Reynolds receives the death sentence. News accounts offered little perspective into the legal and factual issues which must be considered before the imposition of the death penalty.
Although we still believe that a fair and impartial jury could be selected in Waterbury by proper use of the voir dire process, the voir dire process offers no insight into the community pressure that might be brought to bear on jurors after their selection as the trial of this phase commences and continues over a period of weeks.
We are concerned that the reporting following the verdict may be predictive of the nature of the coverage that will occur throughout the trial of the penalty phase — coverage that undoubtedly will be most prevalent in the Waterbury area. The fact that the anniversary of the officer's murder, which previously occasioned highly emotional publicity, may occur during jury selection increases our concern.
The "Williams Petition Campaign For Justice," organized by Waterbury area residents, is still active. This campaign, in the past, has held fundraisers, circulated petitions, and encouraged the wearing of ribbons and T-shirts to urge support for strengthening the existing death penalty statute. It is likely such activities will continue during the trial of the penalty phase. Therefore, the potential effect of the campaign in galvanizing public outcry in the Waterbury community is another factor we must consider.
The trial has reached the stage where prejudgment as to the penalty to be imposed, not prejudgment as to guilt or innocence, is of preeminent importance. The University of Connecticut survey results demonstrate a worrisome degree of prejudgment on the issue of the appropriate penalty for Reynolds or anyone who murders a police officer. The prejudgment revealed on the appropriate penalty was far greater than the prejudgment revealed on the issue of guilt. Seventy-four percent of persons surveyed in the Waterbury area felt that all murderers of policemen and/or Reynolds should be sentenced to death. In comparison, only fifty-three percent of persons surveyed in Stamford and sixty-three percent of persons surveyed in Middlesex County felt the same way.
All of these factors indicate a serious risk of increased, CT Page 11221-H prejudicial community sentiment that, despite the court's instructions, jurors may find impossible to avoid or ignore.
To preserve the constitutional requirement that the death penalty law be applied with fairness, rationality and consistency, a court should seek to avoid the possible tainting of the penalty phase by prejudice or passion. The determination of whether death is the appropriate punishment should be based on a "reasoned moral response . . . rather than an emotional one." (Citations omitted; Internal quotation marks omitted.) State v.Ross, 230 Conn. 183, 234-35, (1994).
Finally, it should be noted that in the penalty phase of a capital felony case, the defendant does not have a unilateral choice in electing a jury or three judge panel. Conn. Gen. Stat. Section 53a-46a(b)(3). Were the court to deny his motion for change of venue, the state may not agree to a trial before three judges, and the defendant would have to try his case before a jury in Waterbury.
The court does not wish to subject the jury, the parties, or the court to the very real specter of a mistrial, and we believe the transfer to another judicial district will not cause undue delay or prejudice to either side.
The defendant's second motion for a change of venue is granted, and the trial of the penalty phase of this case is hereby transferred from the Judicial District of Waterbury to a site to be determined.
KELLER, J.
WEST, J.
ATTACHMENT
CR. 88-62645 SUPERIOR COURT
STATE OF CONNECTICUT JUDICIAL DISTRICT OF
v. LITCHFIELD
RICHARD DUNTZ FEBRUARY 22, 1994
MEMORANDUM OF DECISION ON MOTION FOR CHANGE OF VENUE
CT Page 11221-I
The defendant, Richard Duntz, has filed a motion for change of venue, seeking to have his trial on the charge of murder moved out of Litchfield County. The State of Connecticut opposes this motion.
The court has reviewed the oral testimony given at the February 15, 1994 hearing on this motion, has read hundreds of written articles presented as evidence, and has viewed video tapes from three television channels. The issue is whether the defendant has sustained his burden of satisfying the court that he could not receive a fair and impartial trial in Litchfield County. Conn. Gen. Stat. § 51-353; Conn. Practice Book, Section 835;State v. Townsend, 211 Conn. 215, 224 (1989).
The legal principle involved is easy to espouse, but difficult to apply. This case, the events that led to it, and the light which suffuses it, have been the focus of frequent and intense publicity for the past eight and a half years in normally quiet Litchfield County. Almost half the residents of the county are aware of it to some degree, and that percentage is likely to rise sharply during the trial that is about to begin, because of the close media scrutiny it will certainly receive.
The court believes that a fair and impartial jury could be selected in Litchfield, by proper use of the voir dire juror screening process. Both parties have an inviolate right under the Connecticut Constitution and by statute, to question each prospective juror individually, so as to permit the trial court to determine if that juror is qualified to serve, and to help both sides if exercising their right to peremptory challenges. It is probable that it would take a long time to complete jury selection, but that is not a reason to change the venue.
In determining whether Mr. Duntz could receive a fair trial in Litchfield, the court must go beyond the question of jury selection, and consider what will happen after the trial begins.
The court believes, that as the trial goes on over a period of many weeks, it is probable that a substantial number of people in Litchfield County will have a CT Page 11221-J strongly held opinion of what they would like the verdict to be. This creates a serious risk that in some fashion, whether from newspapers, radio, television, family or friends, these opinions and other comments about the case will be revealed to the jurors sitting on the case. This risk exists even if the jurors do their utmost, to follow the daily instruction that will be given by the court to avoid any mention of the case outside the walls of the courtroom. The court is not skeptical or the jury's good faith efforts to comply with the courts admonition, but given the climate prevailing in Litchfield County, jurors could no more avoid hearing such improper comments, than they could dodge the snowflakes that so frequently fall upon northwestern Connecticut during these months.
This being so, the court does not wish to subject the jury, the parties, or the court to the very real specter of a mistrial which would loom over this trial. This is especially so because transfer to another county could not possibly result in any prejudice to either side.
In the interest of assuring a fair and impartial trial, an interest which is undoubtedly shared by the people of the State of Connecticut and Richard Duntz, the motion for change of venue is granted, and it is ordered that the trial of this case be transferred from Litchfield County to a site to be determined in Hartford County.
RICHARD A. WALSH, J.