[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this habeas petition, originally filed on June 19, 1991, the petitioner alleges that his confinement is illegal on the basis that he was denied the effective assistance of appellate counsel in the underlying criminal proceedings.
Before discussing the merits of the petitioner's claim, a brief procedural review of this matter is appropriate in light of the claims made by the petitioner on January 17, 1997, the date of the habeas hearing.
Upon receipt of the petitioner's initial pro se filing, the court referred the petition to the Office of the Chief Public Defender, and on January 27, 1992 a public defender's appearance was filed on behalf of the petitioner. Subsequently, upon motion of the public defender, a special public defender, David Dee Esq., was appointed. Attorney Dee filed his appearance on August 9, 1993.
By pleading dated April 4, 1994, Attorney Dee moved to withdraw as counsel for the petitioner because his relationship with the petitioner had broken down, and he did not believe it could be restored. On April 26, 1994, the court (Sferrazza, J. ) granted Attorney Dee's motion with the further notation that the petitioner was proceeding pro se.
By order dated May 3, 1994, the court denied the petitioner's request that new counsel be appointed for him on the basis that the petitioner had already waived his right to counsel. For the same stated reason, the petitioner's motion dated May 14, 1994, for the appointment of stand-by/assistant counsel was denied.
The petitioner then filed a motion, dated May 30, 1994, CT Page 1778 seeking an additional period of one hundred twenty days to file an amended petition in order to have sufficient time to investigate facts and obtain the transcripts necessary to prove his claims. The court granted this motion.
Subsequently, by pleading dated July 28, 1995, approximately fourteen months after the petitioner's request for an extension of time, the respondent moved the court to dismiss the petition for failure to prosecute with diligence. The petitioner thereafter, by pleading dated August 11, 1995, sought and was granted a further extension of one hundred twenty days to file an amended petition. The court granted this second request, giving the petitioner until January 31, 1996 to file an amended petition.
As a further twist in the procedural path of this matter, the petitioner, by pleading dated September 6, 1995, filed a motion for bail, arguing that the habeas court had the authority to admit him to bail during the pendency of his habeas petition. By Memorandum of Decision dated September 22, 1995, the undersigned denied bail to the petitioner. The petitioner then filed papers with the Appellate Court which the court treated as a Motion for Review of this court's denial of bail. By order dated October 30, 1995, the Appellate Court granted the petitioner's Motion for Review but denied the relief requested.[1]
The petitioner filed an amended petition dated October 29, 1995. In this pleading, the petitioner alleged that his appellate counsel was deficient because counsel prepared the appellate brief without giving the petitioner an opportunity to read the trial transcripts, that the brief was prepared without talking with the petitioner, and that the petitioner was notified about the brief being prepared after the fact. The petitioner further alleged that appellate counsel failed to raise meritorious issues on appeal and failed to properly brief issues.
The petitioner then filed a Motion dated January 28, 1996 asking that the prayer for relief in his petition be granted for reason that the respondent had failed to timely file a responsive pleading. He claimed in this pleading that he had been subjected to inordinate and inexcusable delay in the prosecution of this matter. The respondent's return was filed on February 20, 1996.
Thereafter, the court issued a notice to both parties scheduling the matter for trial on October 4, 1996. The hearing CT Page 1779 was then rescheduled twice, first to December 9, 1996, and thereafter to January 17, 1997. The notice of the January 17, 1997 trial date was dated December 26, 1996 and was mailed to the petitioner at the MacDougall Correctional Institution, his place of incarceration.
When the petitioner appeared in court on January 17, 1997, he asked for a further postponement, claiming that he had not received notice of the hearing date. Marking the notice to the respondent as Court Exhibit 1, and the Court's copy of the notice to both parties as Court Exhibit 2, the court denied the petitioner's request for a postponement on the basis of its finding that the petitioner had, in fact, received notice of the hearing. Confirming that the petitioner was, indeed, housed at MacDougall on the date the notice was issued, the court did not accept, as credible, the petitioner's claim that he did not receive notice. Given the protracted and tortuous path of this matter, it was and is the court's view that the petitioner's request for a continuance was dilatory. Additionally, the court noted that the respondent had subpoenaed William Gallagher Esq., the petitioner's appellate counsel, who was present in court in obedience to the subpoena, prepared to testify.
Once the court denied the petitioner's request for a continuance, the petitioner then stated that it was his Sabbath, and he stated that he did not wish to proceed on the Sabbath. While the court heard no evidence in support of the petitioner's claim, the court accepts from information in the file that the petitioner is a follower of Islam, and, therefore, that his objection was based, facially, on a claim related to religious practice.[2]
Treating the petitioner's objection to proceeding as a request for a continuance, the court denied the request and the matter proceeded to a hearing. In his post trial brief, the petitioner now alleges that the court's decision to proceed on January 17, 1997 violated the provisions of 42 U.S.C. § 2000bb etseq., commonly known as the Religious Freedom Restoration Act (RFRA).
This legislation, enacted by Congress in 1993, provides, in part, that "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability except . . . Government may substantially burden a person's exercise of religion only if it demonstrates CT Page 1780 that application of the burden to the person (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1. This legislation further provides that a person whose religious exercise has been burdened in violation of the act may ". . . assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(c).
For a number of reasons, each one sufficient, the court does not believe that a postponement was warranted on the basis of a claim by the petitioner that proceeding on Friday would violate his rights under the RFRA. The petitioner's bare assertion that the day of the hearing was his "Sabbath" does not impel the court to the belief that it violates an Islamic religious tenet to conduct litigation on the Sabbath. Even, if such a tenet exists, the petitioner has already demonstrated his non adherence. A review of this file reveals that on two prior occasions, the petitioner filed pleadings with Friday dates (Affidavit dated May 13, 1994 concerning application for standby counsel; Motion for Extension of time dated August 11, 1995). Also, the petitioner filed no motion prior to January 17, 1997 seeking a continuance on the basis of a religious belief. Finally, the petitioner made no fact-based claim that proceeding on Friday would, in fact, interfere with his religious practice.
Given the path of these proceedings, the court views the petitioner's assertion that he did not wish to proceed on the Sabbath as no more than a disingenuous stalling tactic. Even if the court believed that the petitioner was sincere in raising an issue of religious practice, and, assuming that Friday is a Sabbath day in Islamic tradition, the petitioner has pointed to no religious tenet which proscribes participation in judicial proceedings on a day designated as the Sabbath in Islamic faith. Since petitioner has not established by any evidence that participation in judicial proceedings on a Friday interferes with his religious practice, the court does not reach the question of whether the provisions of the RFRA are applicable to such a situation.
Turning to the substance of the habeas petition, the petitioner was convicted of the offense of Murder in violation of Connecticut General Statutes § 53a-54a following a jury trial in the Superior Court, Judicial District of Fairfield. The petitioner, who was sentenced to life imprisonment, is currently CT Page 1781 an inmate in the custody of the Commissioner of Corrections serving the imposed sentence.
The petitioner's conviction was affirmed on direct appeal.State v. Townsend, 211 Conn. 215 (1989).
In his appeal, the petitioner was represented by William F. Gallagher Esq., as a special public defender. On the petitioner's behalf, Attorney Gallagher alleged that the trial court erred by permitting the petitioner to represent himself in the underlying criminal proceedings, and in denying a motion for a change in venue based on pretrial publicity.
In order for the petitioner to succeed in his claim that he was denied the effective assistance of counsel in the criminal proceedings, he has the burden of proving both that his trial counsel's performance was deficient and that he was actually prejudiced by his counsel's deficient performance. Strickland v.Washington, 466 U.S. 668 (1984), Bunkley v. Commissioner,222 Conn. 444 (1992), Copas v. Commissioner, 234 Conn. 139 (1995).
The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the Federal constitution and by Article First, Section 8 of the Connecticut constitution. In order to prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. Aillon v. Meachum, 211 Conn. 352 (1989). Competent representation is not to be equated with perfection. "The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised." Jeffrey v.Commissioner, 36 Conn. App. 216 (1994) (citations omitted). "Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Citations omitted; internal quotations marks omitted.) Johnson v. Commissioner,36 Conn. App. 695 (1995).
The Strickland court also gave guidance to the trial bench for its assessment of ineffective claims. The Supreme Court opined: "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's CT Page 1782 defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy' . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citations omitted.) Strickland v.Washington, supra, 466 U.S. 689-90; Quintana v. Warden,220 Conn. 1 (1991); Williams v. Warden, 217 Conn. 419 (1991); Jeffrey v.Commissioner, 36 Conn. App. 216 (1994).
With respect to the prejudice component of the Strickland
test, the petitioner must demonstrate that, ". . . counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v.Washington, supra 466 U.S. 687. Thus, "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., 691. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings." Id., 693. Rather, a successful petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Copas v.Commissioner, 234 Conn. 139 (1995). "A reasonable probability is a probability sufficient to undermine confidence in the outcome."Strickland v. Washington, supra 466 U.S. 694. "`When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'"Fair v. Warden, 211 Conn. 898, 408 (1989); Jeffrey v.Commissioner, 36 Conn. App. 216 (1994).
While the petitioner is entitled to the effective assistance of appellate counsel, and may bring a habeas based on a constitutional deprivation related to representation by appellate counsel, he must, nevertheless, satisfy both prongs of the CT Page 1783Strickland test in order to obtain habeas relief. And the prejudice prong of Strickland applied to the actions of appellate counsel requires a successful petitioner to prove that, as a result of appellate counsel's deficient performance, he remains burdened by an unreliable determination of his guilt. Bunkley v.Commissioner of Correction, 222 Conn. 444 (1992)
In this case, the petitioner has satisfied neither prong. While a transcript of the criminal trial was not adduced as evidence at the habeas hearing, the court discerns from a reading of the Supreme Court opinion that, at trial, the State presented evidence that on February 18, 1986, the petitioner entered the Gary Crooks Center in Bridgeport carrying a rifle under his coat and looking for the victim. Upon finding the victim, the petitioner shot and killed him. The State also introduced evidence that the petitioner gave an oral statement upon his arrest in which he admitted the shooting, justifying it on the basis that he, as a Muslim, was entitled to kill the victim whom, he claimed, had insulted his wife. The Supreme Court also noted that the petitioner, who insisted on self representation during the trial, introduced no evidence or witnesses on his behalf, and that he argued to the jury that "what you heard and the witness says is what transpired." Id. 217. The court further noted that the petitioner, while not denying the shooting, told the jury that he "did not calculate any of these events", thus apparently arguing that he had not formed the specific intent to kill the victim. Id.
At the habeas hearing, the petitioner asserted during his testimony that Attorney Gallagher had not sent him a copy of the trial transcript or of his brief before filing it with the Supreme Court. He also complained that Attorney Gallagher did not file a reply brief, and he asserted that Attorney Gallagher should have attempted, under State v. Evans, 165 Conn. 61 (1973), and State v. Golding, 213 Conn. 233 (1989), to have raised the issue of the propriety of a pretrial conducted publicly by the court and the adverse publicity created by it.
While the evidence is disputed concerning whether or not the petitioner actually received the trial transcript before counsel's appellate brief was filed, the court need not reach any determination on this non-pivotal issue. Attorney Gallagher testified credibly that during his career he has handled approximately one hundred criminal appeals and that it is not his practice to send transcripts to criminal clients unless they ask. CT Page 1784 He also stated that he accepted appointment as a special public defender in this matter on June 30, 1988, and on July 27, 1988 he wrote to the petitioner at Somers to explain to him that another attorney in his office, Robert Borquez, would be working with him on the file. Attorney Gallagher further testified that Attorney Borquez met with the petitioner on at least two occasions at Somers to review the issues to be presented to the Supreme Court and that the petitioner and counsel agreed that the salient appellate issues were the petitioner's self representation at trial and the court's denial of his motion for a change of venue. Indeed, the petitioner acknowledged on cross examination that he had written a letter to Attorney Borquez, dated February 26, 1989, in which he stated that he had read the brief prepared by counsel and was pleased with it.
With respect to the substance of the appeal, the court finds no fault with the decisions made by Attorney Gallagher concerning which issues to pursue. While the petitioner claimed that counsel should have argued that it was error for the trial court to have conducted a public pretrial, Attorney Gallagher explained that the issue had not been preserved at trial. Additionally, he expressed doubt that the court would have entertained the issue under Evans-Golding because he did not believe he would have been in a position to argue that the pretrial procedure actually prejudiced the outcome of the trial. Instead, Attorney Gallagher stated, he raised the issue of the propriety of the pretrial, as part of his argument that the court should have granted a change of venue. The court finds no fault in this reasoning and in counsel's tactical decision. Indeed, a review of the Supreme Court decision reveals that the court considered the substance of this claim, and concluded that there was no juror prejudice in the underlying criminal proceedings. State v. Townsend, supra,211 Conn. 225. Thus, in determining that there was no actual juror prejudice in the criminal trial, the Supreme Court squarely resolved the issue which would have been presented if counsel had chosen to, and been able to, more directly assail the court's conduct of a publicly-reported pretrial.
Finally, as to the petitioner's assertion that it was ineffective for appellate counsel to have failed to file a reply brief, Attorney Gallagher testified credibly that in this case he saw no reason to file a reply brief. This is a decision counsel is entitled to make. In asserting this claim, the petitioner has pointed to no new issue or argument raised in the State's brief that warranted a reply. CT Page 1785
The court finds no merit to the petition. Accordingly, for the reasons stated, the petition is dismissed.
Bishop, J.