[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO RECONSIDER MOTION FOR TRANSFER OF PROSECUTION
CT Page 16021
The defendant seeks to have prosecution of her case transferred from New London to Bridgeport. A prior motion seeking the same relief was heard in September, 2000 and denied by the court (Handy, J.) in a twenty-four page memorandum of decision. Jury selection before this court commenced on November 13, 2001. The defendant now asserts that (1) the voir dire process is not working effectively to ensure her a fair and impartial jury and (2) that the anticipated publicity that will occur during the trial coupled with the anticipated actions of the victim's family will affect and influence the jurors despite the court's instructions to avoid such information. Accordingly, the defendant seeks reconsideration of Judge Handy's ruling and transfer of her case. The state objects to any change of venue. For the reasons set forth below, the motion is denied.
 I. Background
Jury selection commenced on November 13, 2001. Since then, approximately 150 persons appeared for jury duty on this case. of those, approximately 57 venire persons have now been questioned. The parties have accepted four persons as jurors, and peremptorily challenged eight persons. The court has excused the rest. The principal reason that 46 persons were excused has been employment hardship stemming from the anticipated ten week length of the trial.
None of the four jurors selected have had any significant exposure to the publicity surrounding this case. Moreover, of the six peremptory challenges used by the defense, only one was due to a publicity related issue.
The defense has introduced ten newspaper articles covering the period from late July, 2001 through mid November, 2001. The court has reviewed each of these articles.[1] Nine of the articles are typical factual reports concerning the case. While two of the articles mention the CT Page 16022 defendant's extradition from Ireland and one asserts that the defendant was "on the run," the articles also consistently report the defendant's denial of involvement in the crimes alleged and her cooperation in the apprehension of Haimen Clein. In sum, these articles are not inflammatory.
The tenth article is an exclusive interview provided by the defendant to a Hartford Courant reporter that appeared on the front page of the paper's October 28, 2001 Sunday edition under a large photograph of the defendant. The article draws a sympathetic picture of the defendant reporting that, among other things: she nursed her sick puppy back to health, she was a high school honor student and athlete, and she intends to dedicate her life to humanitarian causes.
The defense has drawn the court's attention to information provided by some venire persons to the effect that they have learned about the case from media reports and in some instances formed opinions about the defendant's guilt. All but one of these persons were excused by the court. The other person was excused by the defense.
 II Discussion
In requesting a change of venue, the defendant bears the burden of demonstrating that she could not otherwise receive a fair and impartial trial. State v. Townsend, 211 Conn. 215, 224, 558 A.2d 669 (1989). Such a request is addressed to the discretion of the trial court. State v.Miller, 202 Conn. 463, 477, 522 A.2d 249 (1987); Practice Book §41-23
As noted above, the defendant asserts that she cannot get a fair trial because the voir dire process is not working and that publicity taint of the jury during trial is unavoidable. On the present record, neither of these claims is persuasive.
 A. Effectiveness of Voir Dire
The voir dire in this case has been comprehensive and thorough. In addition to the standard juror questionnaire, each prospective juror has completed a ten-page Venire Person Questionnaire that includes questions concerning (1) the person's exposure to publicity about this case, (2) knowledge of this case, and (3) any opinions they may have as to the guilt or innocence of the defendant. All of this information is provided CT Page 16023 to counsel for their use during voir dire questioning.
Thus far, the four jurors selected have been exposed to minimal or no publicity about the case. Some persons who have followed the case in the media and formed opinions have been excused by the court. Other persons have noted that they have read or heard about the case, but have been excused because of overriding financial or employment related hardships.
Indeed, of the 57 persons voir dired in only one instance has the defense claimed that they were forced to use a peremptory challenge on a person who for publicity reasons should have been excused for cause. As to that juror, Debra Ann Fecteau, the court was satisfied that despite her exposure to some publicity, she had not formed any opinion as to the defendant's involvement and would decide the case based on the evidence presented at trial and the law. The defense disagreed with that ruling. It is well-established that the fact that a juror has some prior knowledge about the case does not constitute juror prejudice. Dobbert v. Florida,432 U.S. 282, 303, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). In any event, the court has given the parties two extra peremptory challenges beyond the statutory number of 18. The defense will not be forced to take an unsatisfactory juror because of its use of a challenge on Ms. Fecteau.
In sum, the court finds that the jury selection method is working to select a fair and impartial jury.
 B. Potential Taint from Trial Publicity
The defendant's second claim is that even if the voir dire system produces a fair jury, it is inevitable that publicity during the trial will improperly influence them. In support of this position, the defendant relies on one superior court decision that granted a change of venue on this ground. See State v. Duntz, Docket No. CR88-62645, Superior Court Judicial District of Waterbury (Walsh, J., February 22, 1994).
This court does not find Duntz persuasive in the present case for two reasons. First, implicit in the Duntz opinion is the notion that transferring the case would eliminate the risk of juror taint that was present in Litchfield County. In the present case, it is likely that substantial local trial publicity will be generated wherever the trial takes place. Indeed, defense counsel has advised the court that several national media organizations have indicated an interest in covering the case. Were this case tried in Bridgeport, the court would expect extensive coverage by the Connecticut Post. While it is correct that the baseline awareness of the case is greater in New London than in CT Page 16024 Bridgeport, the potential for publicity taint is not eliminated by a change of venue.
Second, unlike the trial court in Duntz, this court is more sanguine about the jurors' ability to follow the court's instructions to avoid publicity and conversations about the case. The jurors so far selected have not been affected by publicity despite what the defense claims is extensive coverage. Moreover, this court is not persuaded that the longstanding principle that jurors are presumed to follow the court's instructions, should be questioned in this case.
The defendant also argues that the anticipated conduct of the victim's family will influence the jurors. In that regard, the record will reflect that the court has ordered the victim's mother to refrain from wearing buttons or displaying signs that could come to the attention of the jurors. Thus far, the victim's mother has complied with that order. In addition, there is no reason to assume that a change of venue would reduce this risk, since it is highly likely that the victim's mother would attend the trial wherever it was held.
 Conclusion
For the reasons set forth above, the motion to reconsider the motion to transfer the prosecution is denied.
So ordered at New London, Connecticut this 4th day of December, 2001.